## GYPSY OIL CO. v. CHAMPLIN et al.

No. 20516. Opinion Filed April 25, 1933.

Rehearing Denied May 23, 1933.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for plaintiff in error.

McKeever, Elam & Stewart and W. L. Moore, for defendant in error.

BAYLESS, J. H. H. Champlin instituted

an action in the district court of Garfield county, Okla., against the Gypsy Oil Company, a corporation, and others, to cancel an oil and gas lease. Judgment was rendered in his favor and against the Gypsy Oil Company, a corporation, and this appeal resulted. The parties will be referred to herein as plaintiff and defendant in the order in which they appeared in the trial court.

The facts necessary to be considered in determining the questions involved in this appeal are substantially as follows:

The owners gave an oil and gas mining lease on a tract of land in Garfield county, Okla., in March, 1916; the lease, and interests therein, by assignments vested in the Furlow Oil & Gas Company and others in 1918, and in August of that year a producing well was drilled in the southwest corner of the tract and a dry hole immediately north of it. After that time no further development took place on this lease. At the time this suit was instituted the producing well so drilled, and the lease on 5 acres upon which it was located, were owned by other parties and are not material to this action. In 1918, the Perpetual Royalty Income Company acquired a one-half interest in the royalty in all of this land, which it still owns. In 1925 the plaintiff acquired the other one-half interest in the royalty and the remaining fee interest in the land. In 1926 the defendant acquired the lease as to the remaining 75 acres. On August 21, 1926, the plaintiff notified defendant by letter that its lease had terminated and demanded a release thereof. The demand for the release assigned as a reason for the termination of the lease "want of operation." The defendant refused to release the lease.

The plaintiff then instituted the action, naming several persons as defendants who appeared of record to have some interest in the land, including the Perpetual Royalty Income Company. The ground assigned by the plaintiff as the basis for its cause of action was a breach of the implied covenant to develop. The defendant defended against this. The Perpetual Royalty Income Company filed an answer in the action, and asked that the plaintiff take nothing by his cause of action.

The defendant contends that plaintiff is not entitled to equitable relief. In support of this contention plaintiff cites the case of Wapa Oil & Development Co. v. McBride, 84 Okla. 184, 201 P. 984, wherein it is said, on page 186, Okla. Reports:

"The general rule as gathered from the dif-ferent cases may be stated that, before the lessor is entitled to declare a forfeiture for failure to comply with implied covenants, for failure to drill offset wells, he must notify the lessee and demand that the lessee comply with the implied covenants. This is nothing more than equitable."

A similar rule is stated in the case of Farmers' Mutual Oil Leasing Co. v. Bonneau, 110 Okla. 168, 237 P. 83, and has been reiterated in the case of Utilities Production Corp. v. Riddle, 161 Okla. 99, 16 P. (2d) 1092. The record in this case discloses that the only action taken by the plaintiff was the writing of the letter dated August 21, 1926, notifying defendant that the lease was terminated for "want of operation," and demanding a release. We, therefore, hold that the letter is insufficient to constitute a demand to comply with the improved covenants of the lease. Under the above rule this is insufficient to entitle the plaintiff to maintain an equitable action seeking to cancel the lease for a failure to perform an implied covenant to diligently develop.

Plaintiff in error also urges other assignments of error, but, inasmuch as the court is unable to agree upon the rule to be announced, the same will not be considered herein. The one assignment of error heretofore discussed is decisive of this appeal.

The judgment of the trial court is therefore reversed and the cause remanded.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. SWINDALL, J., disqualified and not participating. WELCH, J., absent.

---

BUSBY, J. (specially concurring). I concur with the result announced in the majority opinion and with the rule of law announced in the syllabus. However, there is one question discussed in the briefs filed herein on which I desire to express my individual views. This question is: Is it necessary for all joint owners of the mineral rights under a tract of land to concur or join together in an action to recover for breach of a covenant, express or implied, to properly develop?

Three cases of this court are cited in the briefs filed herein to the effect that all of the joint owners of real estate must concur in an election to declare a forfeiture of an oil and gas mining lease, and must join in a notice of intention to declare a forfeiture for a failure to comply with the

implied covenants thereof to develop the property for oil and gas. Two of these cases, the Utilities Production Corp. v. Riddle, 161 Okla. 99, 16 P. (2d) 1092, and the case of Hawkins v. Klein, 124 Okla. 161, 255 P. 570, announced the rule to be as follows:

"All joint tenants must concur in election to declare forfeiture of oil and gas lease, and in required notice."

These cases are based upon the case of Howard v. Manning, 79 Okla. 165, 192 P. 358.

The rule announced above is borrowed from the common law, and became imbedded in our jurisprudence in the distant past before oil and gas had a commercial value. In fact, when little was known of those two substances. In the formation of the rule, the consequences of its application to the laws of oil and gas were not considered.

It appears to me that its continued application to situations involving the rights of tenants in common in connection with oil and gas law is untenable and works a manifest injustice, and that the exigencies of the situation demand its modification and the restriction of its application.

Before considering this rule in the light of the fundamental principles of law and equity, let us view the practical effect of its continued operation. It is a matter of common knowledge that the royalty interest in lands which have a prospective value for oil and gas is frequently and commonly divided into many parts, usually consisting of undivided fractional interests therein. As the land becomes more valuable and the probability of profitable production of oil and gas becomes greater, the number of owners correspondingly increases and the respective share of each is smaller. In nearly all of the productive oil fields of the state, the royalty interests have been divided and subdivided among a multitude of owners. The most common form of acquisition of these interests is through mineral or royalty deeds, conveying undivided portions of the designated tract. Each of the owners acquiring an undivided interest in the mineral rights becomes in contemplation of the law a tenant in common if we apply the old common law definition.

In order to insure a proper and timely development of the property for oil and gas, and in order that protection might be afforded against damages by reason of production on abutting property, the courts have recognized the fugacious nature of oil and gas and have created or treated as existing in oil and gas leases certain implied covenants, such as an implied covenant to drill an exploratory well, an implied covenant to drill additional wells and properly develop, and an implied covenant for the protection of the property against damages. The fundamental purpose of the recognition of these implied covenants is to effect justice and afford protection to the owners of property which has a value for oil and gas purposes. If these covenants fail in the accomplishment of these purposes, they are useless in our jurisprudence.

The best way to test the effect of an abstract rule is to apply it to the concrete problem. Let us assume that A has procured a lease for oil and gas purposes from B, who at the time of the execution of the lease was the owner of 160 acres of land. Let us assume that since the execution of the lease, B has conveyed undivided fractional interests in the royalty by appropriate mineral deeds to 100 different owners who thereby become tenants in common. Let us further assume that development has moved in the direction of the leased premises, and it has become the duty of A, the lessee, under the implied covenants, to explore and properly develop and protect against drainage. A refuses to act. Ninety-nine of the 100 cotenants desire to demand observance of the implied covenant. One is satisfied with the situation. The 99 make their demand, and upon the failure of A to comply, appeal for relief to a court of equity, praying for a cancellation of the lease as far as it affects their interests. They are met at the door of the court of justice with a grim rule of the common law, girded in the armor of the days of the feudal system, and announcing the doctrine that covenants are indivisible and unapportionable, and that unless they obtain the concurrence and coöperation of the remaining cotenant no relief can be granted. The injustice of the situation is apparent. The injustice in applying the rule requiring concurring action on the part of all cotenants, is even more glaring if we assume that the lessee is violating the covenant to protect against drainage. In such a case the 99 lessors would be compelled to sit inactively by while the oil was being drained from under their leased premises, helpless, because they could not get the concurrence of one cotenant.

Implied covenants in oil and gas leases are creatures of the court, and are of somewhat modern origin. They border upon judicial legislation. Being children of the courts, courts are responsible for the form and shape which they assume. If they be-

come contaminated by the inapplicable doctrine of the common law, the fault lies at the door of the judicial branch of the government and cannot be justified.

The rule announced in Utilities Production Corp. v. Riddle, supra, Hawkins v. Klein, supra, and Howard v. Manning, supra, is based on the theory that covenants are unapportionable and indivisible among cotenants.

Covenants as a rule at common law were unapportionable among cotenants, but this is not a rule without exception as was said in the case of Dickinson v. Hoomes (1852) 8 Grat. (Va.) 353.

"It is true, as a general principle of law, that covenants are not apportionable; and so also is it true, as a general principle of law, that covenants are not assignable. But as covenants which run with land are assignable, because the land itself is assignable, so also it would seem that covenants which run with land are apportionable, because the land itself is apportionable. A covenant running with land would be of very little value if it ceased to run with the land whenever the land was divided, whether by act of law or by the act of the owner. We know that covenants for the payment of rent are apportionable, both by act of law and by the acts of parties. 8 Bacon, Abr. Rent. M. And for the same reason why may not other covenants be apportioned? The rule of law that covenants are not apportionable is founded on convenience. But injustice is a greater evil than inconvenience. And wherever justice, or even greater convenience, requires that a covenant should be apportioned, it would seem to be reasonable that the general rule should bend and admit of an exception."

Courts generally recognize as one of the fundamental reasons for implied covenants in oil and gas leases that it is the contemplation of the parties to the lease at the time of its execution that the principal benefit to be derived by the lessor is the revenue that will be obtained in the event of the production of oil and gas, and the ultimate purpose of the implied covenant is to enable the lessor to secure his revenue. This is expressed by Merrill in Covenants Implied in Oil and Gas Leases, at page 40, in the following language:

"It is said that, since the chief return to the lessor is royalty to be derived from the production of oil and gas, there is an implied agreement for diligent and prompt exploration, in order that the lessor may secure his revenue."

Mills and Willingham, in their works on the Laws of Oil and Gas, at page 151, say:

"The doctrine of implied covenants is based squarely upon the right of the lessor to participate in the production secured from the land under the instrument which authorizes its exploration and development by another."

It is to be observed in this connection that most commercial leases provide that the estate of either the lessor or lessee may be assigned in whole or in part. The lease in the case at bar contains the following provision:

"If the estate of either party hereby is assigned, and the privilege of assignment in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. * * *"

The application to the lease, in this case, of the rule announced in the Riddle and Hawkins Cases, supra, would place us in an extremely inconsistent position. We have before us, in the instant case, a lease contract specifically providing that the lessor may assign his rights thereunder in part, and then specifically providing that the covenants shall extend to the assigns. In order to insure proper development, the courts have said that this lease contains an implied covenant to properly develop. Can we consistently say that we will deprive the owner, one of the assigns of a part of the lessor's estate, of his right to enforce this implied covenant unless he secures the co-operation of all other part owners, and this in the face of a specific provision that the lessor may assign in part and that the covenants of the lease shall extend to the assigns? It seems to me that the royalty holder is being adjudged to have a right without a remedy. For certainly a remedy is empty and valueless if the right to exercise it depends upon the whim or caprice of every other cotenant. The rule conflicts with the fundamental principle of equity jurisprudence, "that equity will not suffer a wrong to be without a remedy." I am thoroughly convinced that both justice and the express provision of the contract under consideration require that implied covenants in connection therewith be treated as apportionable among cotenants. If the court should adopt the rule that covenants are apportionable, the cotenants could cancel the lease for breach of an implied covenant upon proper demand as to that portion of the premises owned by himself. This would create the same situation that now exists when one cotenant executed a lease without the concurrence of the other cotenants, which it is recognized may be done. As the rule is announced in the case of Prairie Oil & Gas Company v. Allen,

2 Fed. (2d) 566 (the case arising in Creek county, Okla.) in syllabus paragraphs 2 and 3, in the following language:

"Tenant in common in oil and gas underlying land, without consent of cotenant, has right to develop and operate common property for oil and gas, and may drill wells and erect necessary plant, though he must not exclude his cotenant from exercising same rights and privileges.

"In Oklahoma, tenant in common in oil and gas underlying land may not make valid lease of whole of common property, but may lease his undivided interest therein, and his lessee becomes for time being tenant in common with other owners."

The court in that case also announced the rule of accounting in such a situation in the event of development and production. The rule appears in syllabus paragraph 4, in the following language:

"Tenant in common of oil underlying land, which has been extracted by lessee of a cotenant, is entitled to an accounting from lessee for market value of oil produced, less reasonable and necessary expense of developing, extracting and marketing, but royalty paid by lessee to its lessor is not part of cost of production under Rev. Laws Okla. 1910, sec. 3804 (Comp. St. 1931, sec. 7261)."

Courts of equity in this and other jurisdictions have been liberal in the application of the rules of law, and careful in the creation and application of those rules in order that justice might be effected. To accomplish the ends of justice, they have exercised a wide range of discretion as to the relief that may be afforded. Thus, this court has held in a number of cases that, where a portion of the property covered by an oil and gas lease is properly developed, and there is a breach of the implied covenant to properly develop as to another portion of the lease, the lease may be canceled as to the latter part and permitted to stand as to the former. Scott v. Price, 123 Okla. 172, 247 P. 103; Imo Oil & Gas Co. v. Knox, 120 Okla. 13, 250 P. 117. Thus it appears that in connection with the enforcement of an implied covenant this court has treated the implied covenant as divisible between the different portions of the property covered by the lease. Divisibility is similar to and identical in principle with apportionment among cotenants.

In the case of Cosden Oil Co. v. Scarborough, 55 Fed. (2d) 634 (C. C. A. Tex.) the federal court had occasion to consider and determine, in connection with an oil and gas lease, whether the implied covenants therein contained were divisible when considered from the standpoint of lessees holding under an assignment of portions of the lease. In determining the divisibility of the implied covenants, the Texas court took into consideration the existence in the lease of a clause providing that the estate of either party might be assigned in whole or in part, and that the covenant of the lease should extend to the assigns, etc., which clause was almost identical to the clause in the lease involved in this case, and also considered the instrument as a whole, determining in connection therewith that it was the contemplation of the parties that the estates and interests of both the lessee and lessor might be assigned in whole or in part, and after considering these matters, determined that the implied covenants of an oil and gas lease were divisible. The conclusion was announced in the following language:

"There is ample authority for the view we take, that the lease is indivisible as to the fixing of the term; divisible as to the implied covenant to develop."

If a consideration of all the provisions of the lease contract in the case above quoted justified the conclusion that, in a case where the lessee's interest was divisible, the implied covenants were divisible by reason of the fact that the parties in making the lease contract contemplated future partial assignments, we see no reason why the same logic should not apply with reference to the same covenants by reason of the fact that the lease in the case at bar contemplates partial assignments of the lessor's interest.

I recognize the fact that the rule which I advocate conflicts with the rule announced by this court in the case of Utilities Production Corp. v. Riddle, supra. However, it may be observed that the holding in that case was in the nature of a judicial dictum, and, as far as this particular point was concerned, was not necessary to be considered in order to arrive at the result announced. The principal point in that case is based upon the fact that the notice and demand that the implied covenant be complied with was not sufficient, and that the same was a condition precedent to cancellation. The point now under consideration was not there analyzed, and the effect of the partial assignment clause in the lease was not discussed in the opinion.

The ruling announced in the Riddle Case, supra, was based upon the former ruling of this court in the case of Hawkins v. Klein, supra. The latter case does not reveal whether the lease in question contained a provision similar to the lease in the case at bar; authorizing assignment in whole

or in part, by either the lessor or the lessee, and the effect of such a clause was not considered by the court in that case. The rule in the Hawkins Case was based upon the holding of this court in the case of Howard v. Manning, supra. That case did not involve an oil and gas lease, but, on the other hand, involved an agricultural lease. Apparently the agricultural lease in that case did not contain a clause authorizing partial assignment. That case held that the covenant involved was entire and indivisible, the language of the court on that point being as follows:

"The covenant for the alleged breach of which the plaintiffs in error claimed the right to declare and enforce a forfeiture of the lease is entire and indivisible."

If, then, the federal court in the Cosden Oil Co. Case, supra, was correct in declaring that an implied covenant in an oil and gas lease is divisible, it logically follows that the Manning Case, which is based upon a covenant which is indivisible, is not authority for the rule under discussion for the reason that in this case we are considering a divisible contract. Likewise, the Manning Case was not authority for the holding in the Hawkins Case, if, in the Hawkins Case, the lease contained a provision for partial assignment and the implied covenants were divisible. Thus the Hawkins Case is very doubtful authority for the rule announced in the Riddle Case, especially if the lease in that case contained a provision authorizing partial assignment.

Therefore, it appears to me that this court has fallen into the error of applying a rule which was intended only to be applied to an indivisible covenant, to a covenant which by virtue of the terms and conditions of the contract is divisible and apportionable.

In conclusion, my views may be summarized as follows: (1) The implied covenants of an oil and gas lease are divisible and apportionable for two reasons: (a) Because it is essential to treat them as divisible in order to carry out their fundamental intent and purpose; (b) because in the lease in the case at bar, and in most other commercial leases, a clause is contained providing for assignment in part, and specifying that the covenant shall extend to the assigns. (2) That being apportionable, the breach of an implied covenant may operate as a ground for cancellation of the lease as far as it affects the interest of any one of several cotenants at the option of such cotenant, without the concurrence of the other cotenants.