**COLLIER et al. v. COLLIER et al.**

No. 27447.   Nov. 22, 1938.

Suits & Jeffrey, for plaintiffs in error.

Arnote & Arnote, for defendants in error.

RILEY, J. This action was commenced in the district court of Pittsburg county by Jessie Collier, Fred E. Suits, and R. L. Disney, hereinafter referred to as plaintiffs, against Thomas Scruggs Collier and Oklahoma District Oil Company for partition of certain land located in Pittsburg county.

At the time the action was commenced, plaintiffs were the owners of an undivided one-half interest in the land involved, and Thomas Scruggs Collier was the owner of the other undivided one-half interest, but Thomas Scruggs Collier had executed an oil and gas mining lease to the Oklahoma District Oil Company covering his undivided one-half interest in the land.

It has been stipulated by all the parties that the interest of Suits, Disney, and Jessie Collier may be combined, treated, and partitioned as one unit.

The land involved is located in two sections, approximately 156 acres in lots 1, 2, and 3, and the S. E. ¼ N. W. ¼ section 19, and 30 acres in the N. E. ¼ section 30, township 7 N., range 14 E.

Before the trial Thomas Scruggs Collier had executed mineral deeds whereby he conveyed all his remaining oil, gas, and other mineral rights in the land, and had also executed a deed whereby he conveyed all his interest in the "surface" rights in and to said land. By mesne conveyances these various interests were conveyed to certain other persons who were later made parties defendant.

At the trial the interests of all parties were stipulated to be: W. E. Stroud, an individual, one-half interest in "the surface of the entire tract." Jessie Collier, Fred Suits, and R. L. Disney (treated as one unit), an undivided one-half interest in the entire tract, including surface and mineral rights. John W. Rooks, an undivided 60-acre interest in the oil, gas, and minerals in lots 1, 2, and 3, and the S. E. ¼ N. W. ¼ section 19. V. G. Thompson an undivided 18.345-acres interest in the oil, gas, and minerals in lots 1, 2, and 3, and the S. E. ¼ of section 19. Gertrude Thompson, an undivided one-half interest in the oil, gas, and minerals in the S. ½ of the N. E. ¼ of the N. E. ¼ and the N. W. ¼ of the N. E. ¼ of the N. E. ¼ of section 30.

The court found and held that each of the mineral grantees, viz., Rooks, V. G. Thompson, and Gertrude Thompson, had, under their respective mineral deed, the right of ingress and egress to operate and prospect for oil, gas, and minerals.

The trial court found that:

"* * * The oil, gas and mineral interests, and the lease of said oil, gas and mineral interests, cannot be partitioned in kind, and that said mineral rights, including the right of ingress and egress and the right to prospect and operate for oil, gas and minerals, and the lease thereof, must be sold and the proceeds divided according to the respective interests of the plaintiffs and defendants; and finds that the surface should be partitioned as provided by law."

And it was decreed:

"* * * That partition of said lands be made accordingly; that is, that the commissioner shall make partition of the surface among the parties according to their respective interests, if such partition can be made without manifest injury, but if such partition cannot be made of the surface, then the commissioners shall make a valuation and appraisement of said property and shall report their proceedings to the court forthwith."

And:

"It is further ordered, adjudged and decreed, by the court, that the commissioners shall make a valuation and appraisement of the oil, gas and mineral interests, including the right of ingress and egress and the right to prospect and operate for oil and gas, and other minerals, and the oil, gas and mineral lease, separately; and that Norman Magruder, W. T. Hardy, and A. B. Riggland are hereby appointed commissioners, and upon their taking the oath prescribed by law, they shall proceed to make said partition and report their proceedings to this court forthwith."

The commissioners appointed by the court reported in part:

"We found that partition of the surface of said property can be made between the owners of the surface, according to their respective interests as determined and ordered by said order of the court herein, without manifest injury to said parties, and we have accordingly partitioned the said above-described property as follows, to wit:"

As to the "surface rights," the commissioners apportioned to plaintiffs 78.37 and to defendant Stroud 78.32 acres out of lots 1, 2, and 3, and the S. E. ¼, N. W. ¼, sec. 19, and to plaintiffs 15 acres and to Stroud 15 acres of the 30 acres in section 30. They made appraisement or valuation of "A lease of the oil, gas, and mineral rights, with right of ingress and egress to operate for oil, gas, and minerals at $3 per acre for the first year of the lease term, and $1 per acre for each year of the balance of the term of the lease, or nine years. Separate appraisal or valuation was made of the oil, gas, and minerals together with the right of ingress and egress to operate for oil, gas and minerals at $12 per acre, or a total of the latter of $2,248.28.

It will be observed that the court held as a matter of law that the oil, gas, and mineral interests and the lease of such interests could not be partitioned in kind, but must be sold.

From this order and judgment and from the court's order denying partition in kind to plaintiffs free from the oil and gas lease to the oil company, and from the mineral deeds or grants to the other defendants, plaintiffs appeal.

It does not appear that there had been any development for oil and gas on or near the land in question, and we take it from what is said in the briefs and by the one witness who testified that the land in question was in undeveloped and unexplored territory, and was what is generally termed in "wildcat" territory, and possibilities of oil or gas were entirely speculative.

Plaintiffs first contend that in this case partition proceedings are governed by statutory proceedings, and that the court erred in directing the commissioners to appraise the leasehold and mineral estate separate from the surface.

It is conceded that the rule has been laid down by this and many other courts that tenants in common of an oil and gas mining lease cannot partition same in kind under statutory provisions such as ours.

Plaintiffs contend that this is not such a case. It is not. When Thomas Scruggs Collier executed the oil and gas lease to the Oklahoma District Oil Company, he simply gave that company a right in common with plaintiffs to enter upon and explore the land for oil, gas, and other minerals, and reduce same to possession, accounting to the other tenant in common for the net proceeds. As to rights of the respective parties at that time, only the plaintiffs and the Oklahoma District Oil Company had the right to enter upon and explore said land for oil and gas. Thomas Scruggs Collier had conveyed all his rights so to do to his lessee. When Thomas Scruggs Collier afterwards executed mineral deeds or grants to his remaining interest in the oil and gas rights, he conveyed to such subsequent grantees no right whatever of ingress and egress to operate for oil or gas, so long as the oil and gas mining lease to the oil company was kept in force. Likewise, when Thomas Scruggs Collier conveyed his remaining "surface rights," the grantee thereunder obtained no right to explore for oil and gas. This right was exclusively in plaintiffs, as the owners of an undivided interest in the land, both surface and mineral, and the oil company. Therefore, there was error in holding that the rights and interests of defendants Rooks, V. G. Thompson, and Gertrude Thompson included the right of ingress and egress "to operate and prospect for oil, gas, and minerals." Their rights were limited to their respective shares of whatever royalty the oil company had agreed to pay its lessor, so long as such lease remained in force; what their rights may be after such lease shall become inoperative we need not decide, since the oil company is in this case insisting upon its rights under the lease.

Plaintiffs contend that because they never executed an oil and gas lease, never sold any of their mineral rights or interests in the land, and did not participate in any way in the so-called "severance of the oil, gas, and mineral rights, from the surface rights, they are entitled under the statute to have their ½ interest in the land partitioned to them in kind free from any oil and gas lease right in the oil company, and free from any other grant or conveyance of mineral rights by the owner of the other undivided interest in the land."

In Wolfe v. Stanford, 179 Okla. 27, 64 P.2d 335, it is held:

"Oil and gas rights, though severed from the remainder of the fee, may be subject

to partition, either in kind or by sale, as the circumstances may justify."

And:

"Partition in kind of oil and gas rights is proper where there has been no development on or near the property and there is no other reason to believe one portion of the tract involved is more valuable for oil purposes than another. Where partition in kind cannot properly be allowed, partition may be accomplished through sale and division of the proceeds."

In this case. as pointed out, plaintiffs had in no way participated in or attempted to sever their oil and gas rights. So as to them their interest in the land remained intact. They owned an undivided one-half interest in both the surface rights and the oil and gas rights in each and every acre of the entire tract.

Could it be said that the owner of the other one-half interest therein could by a severance of his oil and gas rights from the surface rights compel the plaintiff to do likewise, and submit to a partition in kind as to the surface rights and a forced sale of their oil and gas rights, and to a forced sale of an oil and gas lease on the premises? We think not. There can be no doubt of the right of Thomas Scruggs Collier to convey his undivided interest in the oil and gas rights without the consent of his cotenants, and such conveyance is not void as to his cotenants. But when the Oklahoma District Oil Company acquired its oil and gas lease from Thomas Scruggs Collier, said company did not acquire a greater right than Thomas Scruggs Collier himself had. The company took its lease with knowledge of the ownership of the other undivided one-half interest, and of their right to partition in kind of their entire interest; so with the grantees of Thomas Scruggs Collier as to his remaining oil and gas rights, they acquired no greater interest than Thomas Scruggs Collier had to convey. They also took with knowledge of the ownership of plaintiffs of the undivided one-half interest in the land. Both lessee and subsequent purchasers of the remaining oil and gas rights simply stepped into the shoes of Thomas Scruggs Collier. There is no just reason why plaintiffs should not have their entire interests in the land partitioned, and set over to them in kind, according to the respective interests of the parties, if such could be done without manifest injury. In this case the court held that the surface rights were subject to partition in kind. The commissioners found, and so reported, that such

partition in kind could be made without manifest injury. There appears no sound reason, then, why the mineral rights and the lease should not be made to correspond to the surface rights after partition, if possible without manifest injury.

In the absence of a showing that a certain part or parts of the land is more valuable for oil and gas or other minerals, partition in kind of the entire interests would seem preferable. There was no such showing in this case.

In Wolfe v. Stanford, supra, it is said:

"In cases where partition in kind is appropriate and allowable as to both estates, the joint consideration of the estates will enable the court to cause the surface rights of such person to correspond as nearly as possible with his royalty interest, a consideration which should have a governing influence with the court in connection with that class of relief."

The exact question was before the court in Morley v. Smith et al., 93 W. Va. 682, 118 S. E. 135. Therein it was held:

"The right to partition of real estate in kind, as required by section 1, chapter 79 (Barnes 1923) Code, cannot be denied where demanded, unless it affirmatively appears upon the record that such partition cannot be conveniently made and that the interests of the co-owners will be promoted by a sale of the property."

And:

"Ordinarily, in such suit, undivided oil and gas rights conveyed by part of the co-owners will follow and be confined to the surface of their allotments."

In the body of the opinion in that case, the court quotes with approval from Boston Franklinite Co. v. Condit, 19 N. J. Eq. 394:

"Each tenant in common of an undivided moiety has a right to partition by having one-half of the whole premises set off to him; he must not be compelled to partition one part with one cotenant, and another with another cotenant, as he would be if such conveyance were good; but the partition must be made into two shares between him and his cotenant, and then if the part conveyed by the cotenant shall fall within the share allotted to him, his deed for the same will bind him, and convey it to his grantee. So, if the ores in one undivided half be conveyed as in this case, the cotenant will not be affected by it, but would be entitled to a partition of the whole between him and his original cotenant, without regard to the rights of the grantee."

The rule stated in Morley v. Smith, supra, was approved in principle by this court in Wolfe v. Stanford, supra. Whether the

whole interests in said land could be partitioned and set apart in kind to each of the interested parties according to their respective interests without manifest injury is, in the first instance, a matter for the commissioners. The court may refuse and decline to adopt their report in the premises, and discharge them and appoint others, but cannot substitute his judgment in such matter for the judgment of commissioners provided by law for just such purpose.

It was error for the court, under the record in this case, to hold as a matter of law, and so direct the commissioners, that the oil, gas, mineral interest, and lease of such interest could not be partitioned along with the surface and direct the appraisal and sale thereof.

For errors pointed out, the judgment and orders of the trial court are reversed, and the cause is remanded for further proceedings consistent with the views herein expressed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and CORN, JJ., concur.