SADLER et al. v. PUBLIC NAT. BANK & TRUST CO. OF NEW YORK et al. (UNITED STATES, Intervener).

PUBLIC NAT. BANK & TRUST CO. OF NEW YORK v. SADLER et al. (UNITED STATES, Intervener).

Nos. 3725, 3726.

United States Court of Appeals Tenth Circuit.

Feb. 7, 1949.

Rehearing Denied March 22, 1949.

H. A. Ledbetter, of Ardmore, Okl., for appellants, Mat A. Sadler, et al.

Geo. N. Otey, of Ardmore, Okl., for appellant, Public National Bank & Trust Co. of New York, trustee.

Earl Q. Gray, of Ardmore, Okl., for appellee, Edwin B. Cox.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for cancellation of an oil and gas lease and for partition of real estate. The trial court entered a judgment refusing to cancel the lease and a judgment partitioning the real estate in question. In Number 3725, the plaintiffs have appealed from the judgment refusing to cancel the lease, and in Number 3726, the Public National Bank and Trust Company of New York, trustee, herein called the bank, has appealed from the judgment partitioning the real estate. The two appeals were submitted on a single record and were argued together.

### Number 3725.

On August 11, 1913, the allottee, Mary Daney, a restricted Indian, executed an oil and gas lease covering her allotment of real estate, which, by mesne coveyances was assigned to Edwin B. Cox. The land covered by this lease may be referred to generally as Tract one and Tract two. Tract one consists of fractional parts of land in Section 30, Township 3 South, Range 3 West, Carter County, Oklahoma, and Tract two consists of fractional parts of Section 28, 32 and 33, all in Township 3 South, Range 3 West, Carter County, Oklahoma. [1]

All of the plaintiffs except Mat A. Sadler and all of the Indian defendants are direct or remote restricted Indian heirs of Mary Daney, deceased, and as such acquired an interest in the land subject to the oil and gas lease above referred to. The interest owned by Mat A. Sadler was acquired by mesne conveyances from the sale of interest owned by some of the restricted Indian heirs. The interest was owned first by the defendant, bank, which, prior to the institution of this action sold this interest to Sadler, retaining, however, an undivided one-half of the mineral interest thereunder.

Plaintiffs instituted this action against Edwin B. Cox, the bank, the restricted Indian heirs and their guardian, and the non Indian defendants.

The first cause of action was for the cancellation of the oil and gas lease covering Tract Number two, and the second cause of action was to quiet title and partition the land in said tract. [2]

For their causes of action, plaintiffs alleged that Edwin B. Cox asserted a claim to an oil and gas lease dated August 11, 1913, covering all the land in both tracts one and two; that oil was found in paying quantities on the North half of the SW¼ of the SE¼ and the SW¼ of the SW¼ of the SE¼ of Section 30, Township 3 South, Range 3 West, more than five years ago; that no additional wells had been drilled; and that in the fall of 1945, plaintiff, Mat A. Sadler, made written demand upon the defendant, Edwin B. Cox, to surrender up said lease as to all nonproductive 10 acre tracts and that said demand was refused. Plaintiffs further alleged that the right of

---

[1] There is an apparent discrepancy in the description of a portion of the land comprising "Tract 1," which, while that Tract is not involved on this appeal, nonetheless should be resolved. The trial court in its Findings of Fact (Finding No. 6) refers to a portion of that tract as "The SW¼ of the SE¼ of the SE¼ of Sec. 30, Township 3 South, Range 3 West." At no other place in the record does this description appear. From the lease, the Secretary's approval, certain deeds which are a part of the record, the trial court's tentative findings of fact and from the trial court's judgment, the true description of this portion of Tract 1 would seem to be the "SW¼ of the SW¼ of the SE¼ of Sec. 30, Township 3 South, Range 3 West". The trial court, no doubt, has authority to clarify these discrepancies upon proper application by the interested parties.

[2] The complaint also named B. A. Williams, T. B. Wall, and B. A. Fowler as defendant lessees, but since neither they nor Tract Number one are involved in the litigation, no reference will be made to them and the factual situation generally will be developed as though the lease covered only Tract Number two.

Cox to the oil and gas lease had long since been abandoned and that the plaintiffs were entitled to have the lease cancelled as to all the acreage except the acreage on which there is now producing oil and that Cox had breached the terms and conditions of the lease in failing to fully develop said lease in accordance with the terms and conditions as written in said lease.

The action was commenced in the State Court. Notice of pendency thereof was served on the Superintendent of the Five Civilized Tribes pursuant to Section 3 of the Act of Congress of April 12, 1926, 44 Stat. 239, and the action was removed by the United States. The United States filed a complaint in intervention in which it alleged the ownership of the land in Mary Dancy, the allottee. The Government's complaint alleged that the "sole purpose of this intervention by the United States is to have established the true ownership of restricted Indian property." The complaint of intervention described the land, the death of Mary Dancy, its descent to the restricted Indian heirs, and their respective fractional interests therein. It alleged the death of various Indian heirs, the descent of their interest and asked the court to allow the quantum of ownership in the respective Indians. The Government's complaint stated that the Government did not join in the request for partition but that if partition be granted that it be permitted to participate in all proceedings thereto the same as any other party in the action. Ultimately all the parties plaintiff and all the parties defendant except Cox and Hamon and the United States joined in the prayer for cancellation of the lease. The bank in its answer, however, resisted plaintiffs' prayer for partition.

The court predicated its judgment refusing cancellation of the lease on the grounds that abandonment of the leasehold had not been established, that all co-tenants necessary to maintain the action of cancellation had not joined therein, and that the necessary conditions precedent to the right to maintain an action for the cancellation of a lease for failure to comply with the implied covenant of reasonable development did not exist.

Plaintiff sought cancellation of the lease on the ground of abandonment as well as forfeiture by failure to develop. There is no evidence nor is it contended that Cox has surrendered the physical possession of the leased premises. The trial court found that Cox was not willing to develop Tract Number two until he secured surrounding leases and made other arrangements. This, however, under the Oklahoma decisions does not constitute abandonment. Neither is the fact that no development has been undertaken on this tract for thirty years sufficient to constitute abandonment of the premises.

In Doss Oil Royalty Company v. Texas Company, 192 Okl. 359, 137 P.2d 934, the Oklahoma Supreme Court reviewed many of its cases relating to abandonment and concluded that many of its former decisions which had been predicated upon abandonment resulting from long inactivity, although correctly decided, were based on erroneous grounds, and that the reason assigned therefor should have been a violation of the implied covenant to develop rather than abandonment. By the Doss Oil Royalty Company case, supra, the Oklahoma court specifically restricted the doctrine of abandonment to cases in which physical possession of the premises was relinquished. At page 938 of 137 P.2d of the opinion, the court said:

"We leave the doctrine of abandonment to be applied in cases where intention to abandon is accompanied by physical relinquishment."

It is conceded that Hamon did not join in the action for cancellation although the court found that by virtue of his partnership relation with Cox, the lessee, his joinder was not necessary. The court, however, found that it was necessary for the Government, as guardian of the Indians, to affirmatively join in the prayer for cancellation, and that this it had failed to do.

It is well settled law of Oklahoma that the heirs and successors in interest of a deceased lessor of lands for oil and gas must unite in bringing an action to cancel because of a breach of an implied covenant

to use due diligence in the development of a leasehold estate. No one of the co-tenants is authorized to act for the other in enforcing the forfeiture. [3]

■. As stated, neither Hamon nor the United States joined in the prayer for a cancellation of the lease. The court concluded that Hamon's consent was not necessary owing to his partnership relationship with Cox, but that the United States' consent was necessary. We think the court erred in both respects. If Hamon acquired his interest in the leased premises in good faith and not for the purpose of preventing a proper cancellation of the lease by refusing to consent thereto, we see no reason in law or equity why he should be treated differently from any other owner. Plaintiffs attempted to prove that his interest was acquired for the sole purpose of preventing the remaining owners of the real estate from maintaining an action to cancel the lease. The issue should have been determined.

■■ A restricted Indian is not without capacity to sue or to be sued with respect to his affairs, including his restricted property. The only difference as to such an Indian is that when he files such a suit or is a defendant therein under the Act of April 12, 1926, 44 Stat. 239, it is necessary to serve notice upon the Superintendent of the Five Civilized Tribes if one would effectively bind the United States, the Indian's general guardian, by such action. The Government, however, is not compelled to come into the litigation and assume the burden of prosecuting or defending the action. If the Government does not come in, the action proceeds to final judgment between the Indian plaintiff or defendant and the opposing party with the same effect as in any other litigation.

Both the Act of April 12, 1926 and the decision by the Supreme Court in Heckman v. United States, 224 U. S. 413, 32 S.Ct. 424, 56 L.Ed. 820, recognize capacity in a restricted Indian to sue or defend actions in his own behalf subject only to the right of the Government to intervene. Thus,

Section 3 of the Act of April 12, 1926, speaks of suits to which restricted Indians are "parties, as plaintiff, defendant, or intervener," and the Supreme Court in the Heckman case, 224 U.S. at page 446, 32 S. Ct. at page 435, 56 L.Ed 820 of the opinion states: "The allottee may be permitted to bring his own action, or, if so brought, the United States may aid him in its conduct * * *." It would thus appear that the Government may in cases brought by restricted Indians, when it is served with notice, enter its appearance and take over the general management of the case without consulting such Indians or it may continue to permit them to participate in the case with the Government.

■ Had the Government entered a general appearance in this case and assumed full control thereof, there could be no doubt that its express ratification of plaintiffs' action to cancel the lease would have been required to state a case for cancellation thereof. But this the Government did not do. It expressly stated that it entered the case for the "sole purpose * * * to have established the true ownership of restricted Indian property." It did not concern itself with the cancellation of the lease and by the express language of its petition in intervention, it did not purport to take over that part of the case. Not having done so, its ratification of plaintiffs' demand for a cancellation of the lease was not necessary. Since that portion of the case remained in the Indians, their ratification of plaintiffs' demand for cancellation was sufficient.

■ It is conceded that no demand was made upon Cox, the lessee, that he develop the premises and that no notice of intention to forfeit in the event of lessee's failure to comply with such a demand was served upon him. Oklahoma has uniformly adhered to the general rule that a demand by the lessor that the implied covenant to develop be complied with and that a reasonable time be given to comply with such demand are conditions precedent to the right to institute and maintain an action for

---

[3] Hawkins v. Klein, 124 Okl. 161, 255 P. 570; Howard v. Manning, 79 Okl. 165, 192 P. 358, 12 A.L.R. 819; Utilities Production Corporation v. Riddle, 161 Okl. 99, 16 P.2d 1092.

cancellation in a court of equity.[4] Neither Indian Territory Illuminatig Oil Company v. Haynes Drilling Company, 180 Okl. 419, 69 P.2d 624, nor Doss Oil Royalty Company v. Texas Company, 192 Okl. 359, 137 P.2d 934, is to the contrary. In the Indian Territory Illuminating Oil Company case, the lessor of a ten-acre lease demanded protection of the premises by the drilling of a line well. The lessee, however, began the drilling of a well in the center of the tract, whereupon, the lessor instituted an action to enjoin the drilling of such well until the lessee had completed the line well for which the lessor was contending. The lessee filed an answer in that action denying the right of the lessor to compel him to drill at any particular location. The action was dismissed on jurisdictional grounds. Thereafter, without any further demand or notice of intent to forfeit, the lessor instituted an action for the cancellation of the lease. The defense to that action was failure to make a demand for development and to give notice of intent to institute action for the cancellation of the lease.

The Oklahoma court specifically reaffirmed its adherence to the fundamental rule by stating [180 Okl. 419, 69 P.2d 630]:

"As to the question of maintaining an action to cancel the lease on the 10 acres without written notice to the I. T. I. O. Company to develop the same, we adhere to the general rule that a court of equity will not cancel an oil and gas lease for failure to comply with implied covenants to develop, unless proper notice has been served upon lessee that a failure to drill will be considered gounds for cancellation of the lease."

The court, however, held that the petition in the injunction action constituted notice and demand and that the answer denying any obligations to comply therewith constituted a refusal, and that under such circumstances the giving of any further notice would be a vain and useless thing

and that no further notice was necessary. The court said:

"The suit filed in the United States District Court by the Haynes Drilling Company and the answer of the I. T. I. O. Company denying any right to compel it to drill at any particular location on the ten acres in question was sufficient notice and sufficient denial. We say, therefore, where positive demand is made by the lessor for the lessee of an oil and gas lease to comply with certain implied covenants in the lease and the lessee manifests a definite and positive intention not to comply with such demand, lessor may immediately commence action without further notice for forfeiture of the lease."

█ But here no notice was given. All that Sadler did was make a written demand that the lease be released of record. Such demand did not take the place of the required notice of demand to develop. In Gypsy Oil Company v. Champlin, 163 Okl. 226, 22 P.2d 102, the plaintiff notified the lessee by letter that the lease had terminated and demanded a release thereof. The demand for the release gave as a reason for the termination, want of operation. The court held that this was insufficient to entitle plaintiff to any relief in a court of equity in an action for the cancellation of the lease. It must follow, under the undisputed facts, that plaintiffs and the defendants joining them were not entitled to a cancellation because of their failure to serve the required preliminary notice. Since the parties seeking a cancellation of the lease are not entitled thereto by failure to demand development and give notice of intent to cancel upon failure to comply therewith, the court's erroneous conclusion as to the necessity of the United States joining in the prayer for cancellation of the lease under its limited intervention, and its erroneous rejection of plaintiffs' offer to establish that Hamon did not acquire his interest in the premises in good faith, do not require a reversal.

4 Papoose Oil Co. v. Rainey, 89 Okl. 110, 213 P. 882; Farmers' Mutual Oil Leasing Co. v. Bonneau, 110 Okl. 168, 237 P. 83; Gypsy Oil Company v. Champlin, 163 Okl. 226, 22 P.2d 102; Utilities Production Corporation v. Riddle, 161 Okl. 99, 16 P.2d 1092; Hudspeth v. Schmelzer, 182 Okl. 416, 77 P.2d 1123; Gibson & Jennings, Inc. v. Amos Drilling Co., 196 Okl. 143, 162 P.2d 1002; Indian Territory Illuminating Oil Company v. Haynes Drilling Company, 180 Okl. 419, 69 P.2d 624.

### Number 3726.

 The bank has appealed from the judgment of partition of real estate in Tract Number two. As pointed out, the bank, by purchase, acquired the fee title to that fractional portion of the real estate in Tract Number two which it subsequently conveyed to Sadler, reserving, however, an undivided one-half interest in the minerals thereunder. The bank's position in this appeal, in substance, is that since Sadler acquired his right to the real estate by deed from the bank which reserved to it an undivided one-half interest in the minerals, he, in effect, agreed that the bank should hold its minerals severed and is thereby estopped from asking for partition. This position is not well taken. The deed by which the bank conveyed to Sadler is not set out in the record, but there is nothing to indicate that it was other than an ordinary deed of conveyance reserving in it an undivided one-half interest in the 3168/11880 interest in the oil and gas and other minerals. The complaint alleged that the bank was an owner of such an undivided interest and the bank's answer and cross petition admitted the correctness of such allegation.

Oklahoma has held while generally the right of partition is absolute that in connection with a partition of oil and gas rights, the court is vested with sufficient discretion in awarding or denying relief to prevent partition from becoming an instrument of fraud or oppression. Wolfe v. Stanford, 179 Okl. 27, 64 P.2d 335, and cases there cited. Oklahoma has consistently held that the mere severance of the surface rights from the mineral rights is not enough to prevent partition. A full discussion of this principle with the citation of a large number of authorities is found in the Wolfe case, supra. In the later case of Collier v. Collier, 184 Okl. 38, 84 P.2d 603, 605, the Oklahoma court reaffirmed this principle. In the opinion, it is stated that: "Oil and gas rights, though severed from the remainder of the fee, may be subject to partition, either in kind or by sale, as the circumstances may justify."

In the case of McInteer v. Gillespie, 31 Okl. 644, 122 P. 184, Ann.Cas.1913E, 400, it was held that the circumstances of the contract between the tenants in common were such that it would be inequitable to grant partition. The court there found that the main consideration for the conveyance of an interest in common was the promotion and development of the tract as an addition and its sale by lots, and that as a result, it would be inequitable to grant partition of the tract. But the court there again pointed out that in the absence of a contract not to partition, tenants in common have the right to partition. The court found that by their contract to subdivide the tract and sell it out in lots, the parties by implication had agreed that partition of the tract should be effected in that manner.

 No such circumstances are shown here which would make it inequitable to grant partition or take this case out of the ordinary rule. This is just the ordinary case where the owner of the tract sells the surface rights but retains an undivided interest in the minerals. The books are replete with such cases and our attention has not been called to a single case of that nature in which partition has been denied.

 The judgment in Number 3725 is not to be construed as an adjudication that there has been no violation of the implied covenants to develop. Its only effect is to adjudicate that the successors in interest of the original lessor were not entitled to maintain this action because of their failure to first make written demand for compliance with such covenants and serve notice of intent to institute an action for the cancellation of the lease upon failure to comply with such demand.

If, however, the necessary parties should serve such demand and notice and should then thereafter institute a similar action, this judgment would not be a bar to the adjudication of such controversy.

The judgment in Number 3725 and in Number 3726 is severally affirmed.