Hamilton Ward, J.
This is an action for the partition of oil. gas and minerals and the rights thereto in accordance with the provisions of article 64 of the Civil Practice Act. The plaintiffs do not seek partition as among themselves but between themselves jointly and the State of New York (Civ. Prac. Act, § 1026).
The subject of this partition action is novel but not unknown to the law of this State and other States where oil and gas are commercially produced. For the reasons and upon the law appearing below, I find that the oil, gas and other minerals and the rights thereto are an interest in real property and partition- *404 able. (Canfield v. Ford, 28 Barb. 336 [1858]; Shepard v. McCalmont Oil Co., 38 Hun 37; 1948 Atty. Hen. 194; 1933 Atty. Hen. 371; First Nat. Bank of Richburg v. Dow, 41 Hun 13; Marvin v. Brewster Iron Mining Co., 55 N. Y. 538, 548; Ryckman v. Gillis, 57 N. Y. 68 [1874]; Thompson, Real Property, § 5319 in replacement vol. 10A and § 5563 in old vol. 10 [1940 ed.]; Wolfe v. Stanford, 179 Okla. 27 [1937]; Holland v. Shaffer, 162 Kan. 474 [1947]; Sadler v. Public Nat. Bank & Trust Co., 172 F. 2d 870 [Okla., 1949]; Collier v. Collier, 184 Okla. 38 [1938]; Wight v. Ingram-Day Lbr. Co., 195 Miss. 823 [1944].) Partition will be directed even where a surface owner owns part of the mineral interest. (Uphoff v. Trustees Tufts Coll., 351 Ill. 146 [1932]; Wight v. Ingram-Day Lbr. Co., supra; Chaffin v. Hall, 210 S. W. 2d 191 [Tex., 1948].)
Prior to 1926, one Frank W. Burton and one David Watters owned in fee and as tenants in common two adjoining lots briefly described as Lots Nos. 58 and 70, Town 1, Range 6 of the Holland Land Company’s survey, containing 363 acres and 348 acres more or less respectively, or a total of 711 acres more or less. David Watters and his wife, Catherine, died intestate prior to February 26,1926. On that date Frank W. Burton and his wife Martha and all the heirs at law of David Watters and his wife Catherine conveyed the lands above described to the Salamanca Trust Company of Salamanca, New York. This conveyance contained the following reservation: ‘‘ Excepting and reserving (to the heirs above named of David and Catherine Watters, deceased) from the lands above described one-half of all the oil, gas and other minerals in, under and upon the lands described, together with free ingress and egress to operate therefor in the same manner as is usual and necessary in connection with producing and operating for oil, gas and other minerals.”
I find that the plaintiffs herein are the sole heirs of David Watters and Catherine Watters.
On the 20th day of May, 1926 the Salamanca Trust Company duly conveyed to the State of New York the above-described premises by a deed containing the following exception: “ Excepting and reserving to Heorge Watters, Frank Watters, William Watters and Rebecca Tripp, being the heirs of David and Catherine Watters, deceased, from the lands above described, one-half of all the oil, gas and other minerals in, under and upon the above described lands, together with one-half of all the oil, gas and mineral rights, together with free ingress and egress to operate therefor in the same manner as is usual and necessary in connection with producing and operating for oil, gas and other minerals.”
*405 By this last conveyance, and I so find, defendant became the pwner of the surface of Lots 58 and 70 and an undivided one-half interest in the oil, gas and other minerals in, under and upon such land, and the plaintiffs by inheritance from the heirs of David Watters and Catherine Watters are now the owners of an undivided one-half interest in the oil, gas and other minerals in, under and upon the premises devised, and the rights thereto, together with the usual and ordinary ingress and egress to harvest these rights. The parties hereto are tenants in common in the oil, gas and other minerals in, under and upon Lots Nos. 58 and 70. The oil, gas and other minerals and rights thereto are interests in real property as defined by section 1012 of the Civil Practice Act and are subject to partition as provided for by article 64 of the Civil Practice Act (cases cited above).
If the defendant, State of New York, was a natural person or a foreign or domestic private corporation, no real problem would arise in the judgment to follow. By section 8 of the Court of Claims Act the State of New York has waived its sovereign immunity. In the view of this court, such waiver includes actions for partition (Civ. Prac. Act, § 1020). However, several practical problems call for the closest scrutiny and exercise of ingenuity by this court of equity to arrive at an equitable determination.
The lands here involved lie Avithin the Allegany State Park, a large wooded area in the southwestern part of the State of New York set aside and dedicated to the use of all of the people of this and other States for recreation. This court has happy recollections of hunting snowshoe rabbits as a boy with his late father, Hamilton Ward, one of the originators of the Allegany State Park in the area herein involved. Lots 58 and 70 are in a remote and little used portion of the park. Properly conducted drilling operations in this area Avill detract little from the aesthetic use of the park by the public for park purposes. Drilling operations are now going on within the park on nearby areas by persons who reserved to themselves or others reserved to them the gas, oil and mineral rights in those areas when the surface of the land was conveyed to the State of Nbav York (Lot No. 22, p. 94 T. R).
The real problem here is how to permit the plaintiffs to realize the benefits reserved to them in the reservation by their ancestors without depriving the State of its rights in the undivided one-half interest in the oil, gas and other mineral rights in and upon these lands. The State is in a different position than a natural person or a private corporation. For reasons satisfactory to the State, it does not choose to explore for and *406 remove oil, gas and other minerals it owns below the surface of lands owned by the State and used for park purposes. In 1944 legislation was passed by the Legislature of this State which would permit the State, upon the recommendation of the Conservation Commissioner and approval of the Allegany State Park Commission, to enter into leases with private operators to develop oil and gas within Allegany State Park but the then Governor of the State vetoed the legislation (Sen. Int. No. 1449, Pr. No. 2100). For this reason, the State cannot join with the plaintiffs or others in leases with private operators which would bring these oils, gases and other minerals to the surface, there to be divided in kind or for a division of the net proceeds.
This court does not view with favor the suggestion made by the defendant in its memorandum: “ For example, the Court could decree a sale of the right to enter, drill and operate, the bid to go to the person offering the highest royalty to the owners; or else the Court could declare the right of the plaintiffs to make a lease of the entire right of entry, subject to the State’s right to receive half of the owners’ legitimate proceeds under such an arrangement. ’ ’ In effect, this proposal is a leasing and as above, the State cannot participate in a lease of mineral rights in park lands. This court should not, by its judgment, direct the defendant to do by indirection that which it cannot do directly. Because of this, the State may be depriving itself of vast sums of money. Allegany State Park lies just across the State line from the famous Bradford oil fields and but a few miles from the Drake well.
Some way must be found to bring about equity between the parties. This is an action in equity (Grody v. Silverman, 222 App. Div. 526 [4th Dept.]).
Upon the trial it appeared by expert testimony that oil and gas below the surface is transitory; that by a phenomenon referred to as “ under-draining ”, to some extent oil, and to a larger extent gas, will move in the direction of a vent caused by drilling into the oil bearing sands below the surface of the earth. Thus, gas and oil will leave its resting place under the lands of one and be removed through the aperture drilled on the land of his neighbor. This is a usual and expected thing in free, competitive development of oil and gas fields, but the State either cannot or will not compete and cannot join with the plaintiffs in a mutual endeavor to capture the mineral resources below the surface of these lots. This puts the State in a “ dog in the manger ” posture and unless the plaintiffs find relief through the equitable powers of this court, they will lose the fruits of the *407 reservation to them by their common ancestors and the defendant is unjustly enriched thereby.
Partition is the only remedy available to the plaintiffs. If partition is undesirable to the defendant State, it can exercise its power of eminent domain. The defendant is now depriving the plaintiffs of their property without just compensation.
It may not be of any real importance but it must not be forgotten that the conveyance from Burton and heirs of David Watters ran to á domestic banking corporation, the Salamanca Trust Company, and not to the State of New York and that the State of New York took its title in turn from the Salamanca Trust Company subject to the above reservation. For this reason, it cannot be said that the heirs of Frank Watters, when they conveyed to the bank, knew or should have known that the reservation of the undivided one-half interest in the oil, gas and other mineral rights might be denied them or their heirs by the inability or unwillingness of the subsequent grantee, the State of New York, to yield up the share of these rights reserved to the heirs of David Watters.
Because the defendant State of New York cannot join with the plaintiffs in a common effort to bring these resources to the surface and there divide them, either in kind or by the division of profits, it is necessary to partition the oil, gas and other minerals and the rights thereto in place below the surface and set over to the plaintiffs one half the oil, gas and other minerals and the rights thereto below the surface of Lots 58 and 70, and set over to the defendant the remaining one-half interest also in place below the surface. A sale of the whole is not feasible and is impracticable (Wight v. Ingram-Day Lbr. Co., ibid.).
Several proposals for partition have been submitted by the plaintiffs. None of these is equitable, for all the plans submitted would permit a gross underdraining of the lots involved to the detriment of the defendant. There is no evidence before this court indicating where oil or gas or both may be found in larger or smaller quantities, if at all, in either lot or portion of either lot. For this reason, it seems to me if we consider that Lot 70 lies to the west of Lot 58, then starting at a point in the northeast corner of Lot 58, a line is drawn to the southwest •corner of Lot 70, the area of the two lots will be divided nearly equally.
The interlocutory judgment to follow will set over to the plaintiffs absolutely, the gas, oil and other minerals brought to the surface by usual operations for such purposes in the area *408 selected by the court and represented in the drawing below, and set over to the defendant absolute, the gas, oil and other minerals in the area indicated below.

By verbal description, the subsurface area set over to the plaintiffs begins at a point in the northeast corner of Lot 58; running thence westerly to the northwest corner of Lot 70; thence southerly to the southwest corner of Lot 70; thence diagonally and northeasterly to the point of beginning. Such a division will protect the defendant State of New York as much as possible from loss of its oil, gas and other minerals and the rights thereto, by underdraining and at the same time deliver over to the plaintiffs enjoyment of the above reservation made on their behalf. This division will permit an easily ascertainable boundary between the partitioned subsurface premises and reserve to the defendant State of New York all the unobstructed use of nearly one half of the surface area of the two lots and, of course, the State retains for its uses the surface of the other one half of Lots 58 and 70 not actually occupied by drilling operations and attendant uses by the plaintiffs.
The judgment to follow shall provide inter alia that the plaintiffs shall cause to be made a proper survey of the area set over to them with suitable monuments defining the boundaries.
The motion of the plaintiffs for judgment is granted; the motion of the defendant for judgment is denied. All other motions made by the defendant upon which the court has reserved are also denied. Settle judgment.