## HOWARD et al. v. MANNING.

No. 9770—Opinion Filed Sept. 7, 1920.

(Syllabus by the Court.)

1. **Landlord and Tenant—Lease—Right of Possession.**

A lease is a contract between the lessor and lessee, vesting in the latter a right to the possession of the land for a term of years. It becomes an estate when it takes effect in possession.

2. **Same—Common Law—Estate for Years —Actual Entry.**

Under the common law no estate for years can be created by a lease, or other common-law conveyance, without an actual entry made by the person to whom the land is granted. However, upon the execution of the lease, the lessee acquires an interest, called an *interesse termini*, which he may at any time reduce into possession by an actual entry, and this may be done by the lessee himself, or, in case of his death, by his executors or administrators.

3. **Same—Effect of Death of Lessor Before Entry.**

The death of the lessor before the lessee enters into possession in no way affects the validity of the lease or the right of the lessee to take possession.

4. **Same—Forfeiture of Lease—Rights of Lessor's Heirs—Tenancy in Common.**

The lessee's covenant not to assign or sublet or permit any other person to occupy the premises during his term is indivisible and entire and not apportioned by the death of the lessor among the lessor's heirs so that less than all the heirs as tenants in common, or their successors, can enforce a forfeiture of the lease as a whole or proportionately to their interest. All the heirs, or their successors, must concur and unite in an election to enforce the forfeiture on account of the breach of entire and indivisible covenants.

5. **Tenancy in Common—Right of Cotenant to Give, or Forfeit Lease.**

Neither tenant in common has, by virtue of his relationship to his cotenant in common, any authority to act as agent for his companion in either giving a lease or enforcing a forfeiture thereof.

6. **Same.**

The relation of landlord and tenant does not exist between the lessee of one tenant in common and the other tenants in common of the lessor, unless the cotenants not joining in the lease ratify it.

7. **Same—Status of Lease by Tenants in Common.**

In theory a lease of land by all the tenants in common is not regarded as one lease by all of them of the premises in its entirety, but as several leases by the tenants in common of their undivided separate and respective shares.

8. **Same—Status of Lessee's Covenants.**

The lessee's covenants, unless otherwise expressed, are joint and indivisible under a lease executed jointly by all the tenants in common.

9. **Same—Lease by Joint Tenants Distinguished.**

There is an important distinction between the estate of joint tenants and the estate of tenants in common. If all the joint tenants unite in the execution of a lease, it is regarded in law as but one lease made by one lessor, whereas a lease executed by several tenants in common is regarded as several leases of their respective and separate shares.

**10. Same—Rights of Tenant in Common—Possession—Leases.**

Neither of the tenants in common is entitled to the possession of all the land to the exclusion of his cotenants, nor entitled to possession of any particular part of it. As he cannot exclude his cotenants by his own occupation of the land, he cannot, without their consent or ratification, lease either all or any particular part of the land in such a way that his lessee will have the right to the exclusive possession of all the land, or any part thereof.

**11. Same—Rights of Lessee of One Tenant in Common.**

A lessee of one tenant in common by a lease in which the other tenants have not joined, is, as to them, a trespasser so far as he occupies any portion of the land; but the lease is not void as against the tenant in common executing it.

**12. Landlord and Tenant—Lease—Forfeiture—Who May Enforce.**

A lessee cannot set up his own default in order to terminate the lease or escape liability under its provisions. If he defaults in keeping covenants in the lease and thus incurs a forfeiture, it is not for him to enforce the forfeiture or rely upon it as terminating the lease. The forfeiture clause is for the benefit of the lessor, and he may elect to waive a forfeiture. The breach of a condition or covenant for which a forfeiture is expressly provided, does not automatically terminate the lease. There must be some act upon the lessor's part evidencing his intention to treat the lease as actually forfeited. He may do this by a declaration of forfeiture or by re-entry.

**13. Same—Waiver of Forfeiture.**

The breach of the lessee's covenant, for which a forfeiture is provided, makes the lease voidable, not at the election of the lessee, but only at the election of the lessor, and any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture.

Error from District Court, Stephens County; Cham Jones, Judge.

Action of attachment by R. A. Howard and J. C. Holden before a justice of the peace against H. B. Salmon to recover landlord's portion of the crops as rent. J. R. Manning, defendant in error, intervened, claiming the rents under prior lease. The judgment of the trial court awarded Manning two-thirds of the rent and plaintiffs in error one-third. Affirmed.

G. G. McVay and R. A. Howard, for plaintiffs in error.

R. C. Drake and W. G. Long, for defendant in error.

RAMSEY, J. R. A. Howard and J. C. Holden, plaintiffs in error, commenced this action against H. B. Salmon before a justice of the peace by filing their bill of particulars and affidavit for attachment to recover as rent their part of the crops valued at one hundred fifty dollars and 95/100 ($150.95), alleged to be due them under an agricultural lease made by them to A. V. Moore, who in turn let the land to defendant, Salmon. The defendant in error intervened and alleges that he is entitled to recover the rents and profits, that the land was of the rental value of $3 per acre; and prays for judgment against defendant for three hundred and sixty ($360.00) dollars. The case was appealed to the district court and tried on an agreed statement of facts. According to the agreed statement Simpson, as the owner and allottee of the land, entered into a written lease with J. R. Manning, intervener, whereby he demised, leased, and let the land in question, 130 acres, to Manning, for agricultural purposes for a term of one year beginning January 1, 1917. The lessee, among other things, covenanted to deliver peaceable possession to the lessor at the end of the term, the premises to be in as good condition as existed at the time the lease commenced, usual wear and unavoidable accident and loss by fire excepted; covenanted not to suffer any waste thereon, nor to lease or underlet the premises; covenanted not to permit any other person or persons to occupy the same; covenanted not to make or suffer to be made any alterations without the written consent of the lessor. The lease also provides:

"That upon the violation of, or default in any of the preceding covenants and provisions, or the nonpayment of rent, as aforesaid, the said first party may at his election declare this lease at an end, and recover the possession of said premises. * * *"

The lease also provides that it shall be unnecessary for the lessor to give the lessee any notice of his election to declare the lease at an end.

According to the agreed statement, the lessor died a few weeks after the execution of the lease, leaving three equal heirs, one of whom conveyed her interest to J. C. Holden and Jesse Kirby. About the 7th day of February, 1917, Holden and Kirby visited the land and found defendant, H. B. Salmon, "occupying the premises without right." Thereupon they leased the land to A. V. Moore for the year 1917, who in turn rented the premises to Salmon, who occupied the same as Moore's sub-tenant for the year 1917. Neither the Moore nor the Salmon lease or contract is in the record. Kirby sold his interest to Howard, one of the plaintiffs in er-

ror. At the time Holden and Kirby purchased the interest from one of the heirs, Manning's lease was on record and they had constructive notice. Soon after this suit was commenced, defendant, Salmon, "confessed judgment" for $150.95 for the rent, and paid the same into court subject to the judgment of the court. The first point involved in this case is whether or not Howard and Holden are entitled to all the rent money, or one-third thereof, or any part thereof. Manning claims that his lease is valid and that he is entitled to all the rent. Plaintiffs in error claim that Manning breached the covenants in his lease, that the same was therefore forfeited, and that he had no interest in the land for 1917 or in the rents accruing therefrom. It should be noticed that the other two heirs of Ben Simpson, the lessor, are not parties to this case, and insofar as this record shows make no contention that Manning, the lessee, violated any of the covenants in his lease or that his lease was forfeited. The other two heirs did not join Holden and Kirby in their lease to Moore.

1. As said by the United States Supreme Court in United States v. Gratiot, 14 Peters, 526, 538, 10 L. Ed. 573, "The legal understanding of a lease for years is a contract for the possession of land for a determinate period with the recompense of rent." Raynolds v. Hanna, 55 Fed. 783, 800; Pelton v. Minah Consolidated Mining Company, 11 Mont. 283, 28 Pac. 310, 311. Tiedemann on Real Property, sec. 538, says:

"A lease is a contract between the lessor and lessee, vesting in the latter a right to the possession of the land for a term of years. It becomes an estate when it takes effect in possession."

2. Plaintiffs in error, as successors and owners of the undivided one-third interest of one of the heirs, contend that Manning, as the prior lessee forfeited his lease by breach of the covenant not to permit any other person or persons to occupy the premises; that Manning, never having been in possession of the land under his lease, acquired no estate for years; and that they, as the owners of an undivided interest in the title, had the power to declare the lease either forfeited in its entirety or forfeited in proportion to their undivided interest in the fee.

The first question in this case is this: Can a part of the heirs of a deceased lessor or the purchasers from a part of the heirs of a deceased lessor enforce a forfeiture, in whole or proportionately to their interest, of a lease executed by the lessor, on account of the violation of a covenant against subletting, assigning, or permitting other persons to occupy the premises? Whether or not the

lessee had acquired an estate for years by actual entry under the lease is immaterial. Under the common law a lease itself did not create an estate for years. A lease with actual entry thereunder creates the estate. Greenleaf's Cruise on Real Property, vol. 1, tit. 8, secs. 12 and 13, says:

"No estate for years can be created by a lease, or other common-law conveyance, without an actual entry made by the person to whom the land is granted; for, although the grantor has done everything necessary on his part to complete the contract, so that he can never afterwards avoid it, yet till there is a transmutation of the possession, by the actual entry of the grantee, it wants the chief mark and indication of his consent, without which it might be unwarrantable to adjudge him in actual possession to all intents and purposes; and for this reason the law does not cast the immediate and actual possession on him till he enters; neither has the grantor a reversion to grant till such entry."

"Upon the execution of a lease, the lessee acquires an interest, called on interesse termini, which he may at any time reduce into possession by an actual entry. This may be made not only by the lessee himself; but, in case of his death, by his executors or administrators."

See, also, Kent's Commentaries, vol. 4, sec. 97.

Greenleaf's Cruise on Real Property, vol. 1, tit. 8, sec. 19, also says:

"Where an estate for years is granted to commence in futuro, it cannot of course be executed by an immediate entry, as that would be a disseisin; it is, therefore, only an interesse termini; but still the lessee may assign it over; and even if a stranger enters by wrong. yet such grant will transfer the lessee's power of entry, and right of reducing the estate into possession. For till the entry of the lessee, the estate is not executed, but remains in the same plight as it was when the lease was made; so that no intermediate act, either of the lessor, or of a stranger, can divest or disturb it; because whoever comes to the possession, whether by right or wrong, takes it subject to such future charge, which the lessee may execute whenever he thinks fit. as by a title prior and paramount to all such intermediate violations of the possession."

Coke Upon Littleton, vol. 1, sec. 66, on the subject of tenants for years, says:

"Also, if a man letteth land to another for term of yeares, albeit the lessor dieth before the lessee entereth into the tenements, yet he may enter into the same tenements after the death of the lessor, because the lessee by force of the lease hath right presently to have the tenements according to the forme of the lease."

The covenant, for the alleged breach of which plaintiffs in error claim the right to declare and enforce a forfeiture of the lease, is entire and indivisible. Manning is the covenantor and Simpson, the lessor, was the covenantee. The lessor or his heirs or vendees could take advantage of the breach of the covenant, but the lessor could not fractionize or apportion the lessee's covenant by either conveying the lands to several parties as tenants in common or dying and leaving it to a number of heirs. The death of the lessor did not apportion or divide the covenant. The lessee's contract was not altered, modified, or affected by the death of the lessor other than with respect to the payment of the rent. After passing out of the hands of the lessor's administrator (if he had one), each heir had the right to receive his part of the rent, but that did not apportion the indivisible covenants in the lease. Upon the death of the lessor the lessee's covenants in question run to the heirs jointly and indivisibly. If the death of a lessor leaving several heirs operates to apportion the lessee's covenant so that one, or any number less than all the heirs as tenants in common, can enforce a forfeiture, then the death of the lessor operates to convert the single lease into as many separate leases as there are heirs. In theory a lease of land by two or more tenants in common is not regarded as one lease by all of them of the premises in its entirety, but as several leases by the tenants in common of their undivided separate and respective shares. The relation of landlord and tenant does not exist between the lessee of one tenant in common and the other tenants in common of the lessor, unless the cotenants not joining in the lease ratify it. Underhill on Landlord and Tenant, vol. 1, sec. 64. There is a distinction between the estate of joint tenants and the estate of tenants in common. An important distinction also exists as to the execution and operation of leases between those made by joint tenants and those made by tenants in common. If all the joint tenants unite in the execution of a lease, it is regarded in law as but one lease made by one lessor, whereas, a lease executed by several tenants in common is regarded as several leases of their respective and separate shares. Thus, the English authorities hold that one joint tenant may enforce a forfeiture of the whole lease. Freeman on Co-Tenancy and Partition, sec. 108. On the theory that the joint tenants are seized per tout, as well as per my, the English cases hold that a declaration of forfeiture or notice to quit given by one joint tenant, compels the lessee to give up the whole premises. But one joint tenant cannot make a lease binding on his co-joint-tenants,

though he may make a lease on the whole property. Underhill on Landlord and Tenant, vol. 1, sec. 61. The death of one joint tenant extinguishes his interest. It does not descend to his heirs, nor to his co-tenant. Tiedemann on Real Property (3rd Ed.) sec. 177. Blackstone says that joint tenants "have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same possession." Tiedemann on Real Property (3rd Ed.) sec. 176. Thus Washburn on Real Property (6th Ed.) vol. 1, sec. 858, says that one among the incidents of a joint tenancy growing out of the identity of interest and title of the several tenants is this:

"That an entry or re-entry made by one is deemed to be the entry of all, unless clearly shown to be adverse toward his cotenants; so livery of seisin made to one is made to all; and the occupation by one cotenant is prima facie an occupation by all."

Neither of the tenants in common is entitled to the exclusive possession of all the land to the exclusion of his cotenants, nor entitled to possession of any particular part of it. As he cannot exclude his cotenants by his own occupation of the land, he cannot, without their consent or ratification, lease either all or any particular part of the land in such a way that his lessee will have the right to the exclusive possession of all the land, or any part thereof. It is well settled that a lessee of one tenant in common by a lease in which the other tenants have not joined, is, as to them, a trespasser so far as he occupies any portion of the land. The lessee of one tenant in common is a trespasser as to the other tenants in common, but the lease is not void as against the tenant in common executing it. Underhill on Landlord and Tenant, vol. 1, secs. 62 and 64; Miles v. Fink (Miss.) 80 South. 532; South Penn Oil Company v. Haught (W. Va.) 78 S. E. 759; Watford Oil & Gas Company v. Shipman, 233 Ill. 9, 84 N. E. 53; Zeigler v. Brennerman, 237 Ill. 15, 86 N. E. 597; Archer on Oil & Gas, p. 660; Stewart v. Tennant, 52 W. Va. 559, 44 S. E. 223. Neither tenant in common has, by virtue of his relationship to his cotenant in common, any authority to act as agent for his companion in either giving a lease or enforcing a forfeiture thereof. Freeman on Co-Tenancy and Partition, sec. 180; 38 Cyc. 105; Rotzien v. Merchant's Loan & Trust Co. (S. D.) 170 N. W. 128; Adams v. Yukon Gold Co., 251 Fed. 226.

Now, if the death of the lessor operates to apportion among the heirs the covenant in question, then a number of the tenants in common less than all can enforce a forfeiture of the lease in so far as they are concerned,

leaving it valid and binding on the other tenant or tenants in common not concurring in the forfeiture, and thus create a situation where the lessee becomes a trespasser and responsible for damages to certain owners and entitled to occupy the premises as to certain other owners. It is well settled that a lessee cannot set up his own default in order to terminate the lease or escape liability under its provisions. If he defaults in keeping covenants in the lease and thus incurs a forfeiture, it is not for him to enforce the forfeiture or rely upon it as terminating the lease. The forfeiture clause is for the benefit of the lessor, and he may elect to waive the forfeiture. The breach of the condition for which a forfeiture is expressly provided, does not automatically terminate the lease. There must be some act upon the lessor's part evidencing his intention to treat the lease as actually forfeited. He may do this by a declaration of forfeiture or by re-entry. The breach of the covenant makes the lease voidable, not at the election of the lessee, but only at the election of the lessor, and any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture. Camp v. Scott, 47 Conn. 366; Croft v. Lumley, 6th House of Lords Cases, 705; Blyth v. Dennet, 13 Com. Bench, 178; Bowers on the Law of Waiver, secs. 52 to 61, inc.; Gradle v. Warner, 140 Ill. 123, 29 N. E. 1118; Farlow v. Ellis, 15 Gray (Mass.) 229; Nagel v. League, 70 Mo. App. 487; Allen v. Dent, 4 Lea (Tenn.) 680; Insurance v. Diggs, 8 Baxter (Tenn.) 568; Underhill on Landlord and Tenant, vol. 1, p. 648; Lewis v. Ocean Nav. & Pier Co., 125 N. Y. 341, 26 N. E. 301.

If the right to enforce a forfeiture accrues and a part of the tenants in common are allowed to elect to enforce the forfeiture, then the lessee is placed in the inequitable position of being bound by the lease as to part of the tenants and discharged by a part, which means that the lessee is still liable as a lessee to some of the tenants in common, although he cannot enjoy any of the benefits of his lease without becoming a trespasser and liable for damages to the other owners of the land. A fair conception of honesty and fair dealing negatives a construction of the lease imputing to the lessor and lessee an understanding or intention that the lessee's covenants of the character involved in this case are subject to apportionment by the death of the lessor leaving more than one heir. If the death of the lessor operates to apportion the benefits of the covenant among his heirs, then there can be a partial forfeiture, leaving the lessee bound to part of the heirs but denied all practical benefits under the lease.

This would create a sort of tenancy which, we believe, it would be unreasonable to hold that the lessor and lessee intended or contemplated.

Under the American authorities the lessee's covenants, unless expressed otherwise, are joint and indivisible under a lease executed jointly by all the tenants in common. The heirs of a deceased lessor are in no higher position with respect to the covenants in the lease than they would be if they jointly executed the same lease, although the lease may expressly reserve to each his proportionate interest in the rents. In Calvert v. Bradley, 16 How. (U. S.) 581, 14 L. Ed. 1088, the court held that where a lease was made by several owners of a house, reserving rent to each one in proportion to his interest, and there was a covenant on the part of the lessee that he would keep the premises in good repair and surrender them in like repair, the covenant was joint as respects the lessors, and one of them, or two representing one interest, could not maintain an action for a breach of it by the lessee. See, also, Jameson v. Chanslor-Canfield Midway Oil Company (Cal.) 167 Pac. 369; Clapp v. Institution of Savings, 15 R. I. 489, 2 Am. St. Rep. 915; Cochran v. Gulf Refining Company (La.) 72 South. 718; Sandusky v. West Fork Oil Company, 63 W. Va. 265, 59 S. E. 1082; Cleaves v. Lord, 3 Gray (Mass.) 68; Thompson v. Hakewell, 35th L. J. C. P. 18-23, 15th Eng. Rul. Cases, 436; 2nd Cruise on Real Property, tit. 13, ch. 2, sec. 58; Coke Upon Littleton, vol. 2, 215-A (Butler and Hargraves Notes).

In Cochran v. Gulf Refining Company (La.) 72 South. 718, supra, the lessor died after making the lease, and the court held that the covenants involved were indivisible and that a part of the heirs could not maintain an action for breach thereof. There is no doubt about the right of one tenant in common to maintain an action for the recovery of real property against a third person, his recovery being limited to such interest in the premises as he proves title in himself superior to that of the defendants. Moppin v. Norton, 40 Okla. 284, 137 Pac. 1182. See, also, Williams v. Cold Creek M. & M. Company, 115 Tenn. 578, 6 L. R. A. (N. S.) 710, and annotations. But that is not the question in this case. Nor does this case involve the right of one tenant in common to sue for the cancellation of his part of the lease obtained by fraud.

3. The alleged forfeiture for breach of covenant, not having been declared by declaration of forfeiture joined in by all the tenants in common, and the alleged forfeiture not being self-executing, the lease, in so far as this record shows, was a subsisting and valid lease for the entire year of 1917.

The agreed statement of facts states that $150.95 is the amount of the rents, and that Salmon paid that sum over to the officer of the court. There is no other evidence of the rental value of the land for that year, and in the absence of evidence to the contrary, we will treat that amount as the fair rental value of the land for the year 1917. The district court was of the opinion that the plaintiffs in error were entitled to one-third of the rents and defendant in error, the intervener, two-thirds, on the theory that plaintiffs in error owned the fee title to an undivided one-third of the land, unincumbered by the intervener's lease, and that the intervener had a subsisting lease only on an undivided two-thirds interest and as such only was entitled to two-thirds of the rental value. The judgment is erroneous. The intervener was entitled to the full sum as the rental value, but he took no appeal from the judgment awarding plaintiffs in error one-third, and the judgment is therefore affirmed.

All the Justices concur, except McNEILL, J., not participating.