John H. GARIBALDI et al., Appellants,

v.

OKLAHOMA INDUSTRIAL FINANCE CORPORATION, an Oklahoma Corporation, Appellee.

No. 46469.

Supreme Court of Oklahoma.

July 8, 1975.

LeRoy Powers, Oklahoma City, for appellants.

James E. Work, Shirk, Semtner, Work & Robinson, Oklahoma City, for appellee.

BARNES, Justice:

Appellants Garibaldis are the owners in fee of Lot 28, Block 23, of the Original Plat of Oklahoma City, Oklahoma, which was condemned by the Oklahoma City Urban Renewal Authority on April 26, 1972. The Commissioner set the damage sustained by the taking at $37,500.00. The Trial Court awarded $24,003.50 to the Appellants Garibaldis and $13,496.95 to the Appellee. Appellants filed a Motion for New Trial. After oral argument, Appellants' motion was overruled. Appellants appealed. The Court of Appeals affirmed the Trial Court. Appellants moved for a rehearing. The Court of Appeals denied the motion. Appellants seek certiorari.

At the time of taking, the Appellants Garibaldis had executed on January 1, 1958, a 99-year lease with the Mid-America Building Corporation, a wholly owned subsidiary of Appellee, Oklahoma Industrial Finance Corporation [hereafter referred to as OIFC]. By the terms of the lease, Mid-America Building Corporation was to pay $200.00 per month, plus all taxes.

In January, 1964, the Mid-America Building Corporation changed its name to the Malcolm Corporation. In that same year there was a statutory merger of Malcolm into its parent OIFC, which then acquired all of Malcolm Corporation's assets.

Appellants contend the following:

(1) That the Court's finding that Appellee became the owner of the leasehold estate originally granted by Appellants to

Mid-America Building Corporation because Lessor accepted rentals from Appellee wholly overlooks or ignores the clear and unambiguous provision of paragraph 6 of the lease which requires an express assumption in writing of the obligations of the lease in order to effect an assignment or transfer of the leasehold estate.

(2) That there is no competent evidence to support the finding that the leasehold estate on the date of taking, April 26, 1972, had a market value of $13,496.95.

Appellants contend that the Court's finding that Appellee became the owner of the leasehold estate originally granted by Appellants to Mid-America Building Corporation because Appellant-Lessor accepted rentals from Appellee wholly overlooks or ignores the clear and unambiguous provision of paragraph 6 of the lease dated January 1, 1958, which requires an express assumption in writing of the obligations of the lease in order to effect an assignment or transfer of the leasehold estate.

■ The rule is that since a covenant against assignment is one for the benefit of the Lessor, it may be waived. *Howard v. Manning,* 79 Okl. 165, 192 P. 358, 12 A. L.R. 819 (1920). In this case the Appellants Garibaldis had received rent from Appellee OIFC for approximately eight years. Mr. James Garibaldi testified at page 13 of the record that he thought Mid-America Building Corporation had merged with Liberty Bank, and yet he did not inquire further or terminate the lease because of this supposed merger. Further, prior to the condemnation, in approximately 1968, when Urban Renewal "became interested in" the property, Appellee's President contacted Mr. Garibaldi and discussed the possible taking by Urban Renewal. Appellee's President testified that at that time he identified himself and indicated that his company held the ground lease on the lot. This testimony was not contradicted, yet Appellants Garibaldis continued to accept checks from OIFC for the monthly rent for almost four more years.

In order for the acceptance of the rent to constitute a waiver, the Lessor must have knowledge of the assignment. *Holt v. Warren,* 176 F.2d 479 (10th Cir. 1949). We think this evidence is sufficient to "warrant the inference" of knowledge of the assignment and thus is sufficient to sustain the Trial Court's finding that the requirements were waived by Appellants.

■ Appellants argue that "Under the terms of the lease upon the institution of condemnation proceedings the lease was either 'forfeited' under paragraph 13 of the lease or terminated, as provided by paragraph 18 of the lease, and the rights of Lessee, if any, were limited to such provisions."

Paragraph 13 of the lease dated January 1, 1958, provides:

"That Lessee shall have the privilege of removing or razing the existing building or buildings now standing on the said leased premises and using the material therefrom as it may seem fit, and the further privilege of erecting a new building or buildings thereon with a like privilege of removing or razing these or any other buildings which the Lessee may add during the term of this lease. The parties hereto stipulate and agree that should this lease be forfeited for any reason during the first fifteen (15) years of the said lease and should the Lessee have demolished the existing buildings during that fifteen (15) year period it is agreed that the Lessee will indemnify the Lessor by the construction of a new commercial building or buildings of a similar type or the Lessee agrees to pay to the Lessor the sum of $15,000.00, or should the Lessee construct a building or buildings on the said premises which are of a lesser value than $15,000.00 then the Lessee agrees to pay the difference between the value of the said buildings and $15,000.00 in order that the Lessor will be paid the total sum of $15,000.00."

Shortly after the lease went into effect, the building was demolished and no new building has been constructed to replace it.

The argument is that the condemnation of the lot during the fourteenth year of the lease caused a forfeiture of the lease, and therefore the Appellee-Lessee must pay the Lessor $15,000.00. The Appellee cites no cases to support this argument.

We think that construing a condemnation by Urban Renewal as a "forfeiture" would be a strained interpretation of the lease. Forfeiture in this context is defined as the "right of a landlord to terminate a lease because of the lessee's breach of covenant or other wrongful act." *Brazeal v. Bokelman,* 270 F.2d 943 (8th Cir. 1959). We do not think the language "forfeiture for any reason" changes this concept, or enlarges it to include involuntary breaches resulting from an act of a governing authority. *Woodville v. United States,* 152 F.2d 735 (10th Cir. 1946).

■ Appellants argue that paragraph 18 provides for termination of the lease. Paragraph 18 reads as follows:

"That should the land whereon said building or buildings stand or any part thereof be condemned for public use or be conveyed by the parties hereto to avoid proceedings in condemnation, then in that event, upon taking of the same for public use, this lease, at the option of Lessee, shall become null and void, and the term cease and come to an end, anything herein contained to the contrary notwithstanding, except however, that Lessee may prove and collect from the condemning authorities the value of fixtures and improvements installed in or made to the premises by Lessee."

Appellants argue that this clause provides for two situations, a partial taking, and condemnation of the entire property. They interpret the provision to say that if only a part of the lot is condemned, the Appellee-Lessee would have a choice of continuing or terminating the lease. But they contend that the last part of the sentence refers to a total taking, in which case Appellee-Lessee is limited in its recovery to "the value of fixtures and improvements" it has installed.

We feel a proper interpretation of paragraph 18 is that when there is a partial taking, the Appellee-Lessee has a choice of continuing the lease or terminating the lease and being paid for its fixtures and improvements by the condemning authority. In a total taking, the rights of the Appellee-Lessee to share in the award become vested at the time of the taking, absent an agreement to the contrary. *Phillips Petroleum Company v. Bradley,* 205 Kan. 242, 468 P.2d 95. There was no agreement to the contrary. Therefore, Appellee-Lessee is entitled to share in the condemnation award.

The Court, in *Corrigan v. City of Chicago,* 144 Ill. 537, 33 N.E. 746, 3 A.L.R.2d 292, said:

"The measure of compensation for the estate of the tenant taken is the value of her leasehold estate, subject to the rent covenanted to be paid. If the value exceeds the rental she will be entitled to recover the excess. If it does not exceed the rent reserved, she will be entitled to nothing."

In 27 Am.Jur.2d, Eminent Domain, § 352, it is provided as follows:

"In many cases the measure of damages for a leasehold interest taken under eminent domain has been declared generally to be the fair market value of the leasehold or unexpired term of the lease. It is similarly stated in a number of cases that the measure of damages * * * is the market value of the unexpired term of the lease over and above the rent stipulated to be paid * * *. Strictly speaking, the measure of compensation for a leasehold interest taken under eminent domain is said to be the difference between the fair rental value of the leased premises for the unexpired term of the lease and the rent reserved in the lease * * *."

The two Appraisers, both members of the American Institute of Real Estate Appraisers, who testified in this case, disa-

gree considerably. Mr. Frank Grass, who testified in behalf of the Garibaldis, stated that in his opinion the leasehold had no fair market value because the rental and taxes required to be paid by Appellee-Lessee exceeded the income which the Appellee-Lessee was receiving from the property.

Mr. Howard Sears, who testified for Appellee OIFC, testified that since Appellants-Lessors were receiving $200.00 per month, which they had the right to receive for an additional 85 years, that he valued this income stream by discounting it at the rate of 10% for present value at approximately $24,000.00; that he then subtracted this amount from the total condemnation award of $37,500.00 and concluded that the interest of the Appellee-Lessee would be the difference, or $13,500.00.

We find that this is not a fair method of division because if the same factor were applied to the Appellee-Lessee's income stream, 9.997 x $544.49, the Appellee-Lessee would receive only $5,443.27, and if the Appellants-Lessors were given the remainder they would receive $37,500.00 minus $5,443.27, or $32,056.73.

As far as we can determine, there has been no specific method approved in Oklahoma for measuring the value of a leasehold interest.

We find, *considering the facts of this case,* that a division of the proceeds between the Lessee and Lessors based upon the ratio of their respective net earnings adjusted by the time remaining in the lease is fair and equitable.

The factors to be used in computing this division are:

| | |
|---|---|
| Award by Urban Renewal | $37,500.00 |
| Lease rental paid by Lessee | $ 2,400.00 per year |
| Taxes paid by Lessee | $ 655.51 per year |
| Lease rental received by Lessors | $ 2,400.00 per year |
| Subrental received by Lessee prior to Urban Renewal | $ 3,600.00 per year |
| Net yearly income of Lessee ($3,600.00 — $2,400.00 — $655.51 = $544.49) | $ 544.49 |
| Net yearly income of Lessors | $ 2,400.00 |
| Number of years remaining of 99 year lease | 85 |
| Portion of lease remaining | 85/99 = .8586 |

By use of the above basic figures, we determine the Lessee's part of the award to be $7,304.68, and Lessors' part to be $30,195.32. The calculations used to arrive at those figures are set out as follows:

X = Lessee's portion of award, if lease had 99 years to run (full term)

$$\frac{\text{Net income to Lessors}}{\text{Net income to Lessee}} = \frac{\$37,500.00}{X}$$

$$\frac{\$2,400.00}{\$544.49} = \frac{\$37,500.00}{X}$$

(X) ($2,400.00) = ($37,500.00) ($544.49)

$$X = \frac{(\$37,500.00) \ (\$544.49)}{\$2,400.00}$$

X = $8,507.66

Lessee's portion with 85 years remaining on 99 year lease ($8,507.66) (.8586) = $7,304.68

Lessors' portion of award, $37,500.00 — $7,304.68 = $30,195.32

It is the order of this Court that Appellants' Petition for Certiorari is granted. The opinion of the Court of Appeals is hereby vacated. The judgment of the Trial Court is reversed, and the Court is directed to render judgment to the parties as set out above.

All Justices concur.