** Part I of Part II ** The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions: 1. Is property, both real and personal, held by Public Trusts, pursuant to 60 O.S. 176 [60-176] et seq. (1971), as amended and other legislative provisions exempt from ad valorem taxation under Article X, Section 6 of the Oklahoma Constitution or by any other Constitutional authority ? 2. If such public trust property is not constitutionally exempted from ad valorem taxation, is the present practice of according either an express or implied ad valorem tax exemption to such property violative of the Constitution ? 3. If such property is not exempt from ad valorem taxation are the County Assessors now required to place such property, upon the tax rolls for the purposes of ad valorem taxation ? It would be perhaps beneficial to commence this opinion with a few prefatory remarks. Although your request contains three separate questions, it is only necessary to address the first inquiry. If the answer to the first question is in the affirmative, neither of your other questions require response and if the answer is in the negative, both your subsequent questions must, by operation of law, be answered in the affirmative. Article X, Section 8, Okla. Const. The Oklahoma Constitution speaks to the subject of ad valorem tax exemptions, directly or indirectly, in at least four separate places. Article I, Section 3; Article X, Section 6 and Article X, Section 6A; and Article XII-A, Section 1 and Article XII-S, Section 2, Okla. Const. Property owned by a public trust created pursuant to 60 O.S. 176 [60-176] et seq. (1971), as amended, cannot by definition also be property of the United States or reserved to its use. Article I, Section 3, Okla. Const. Likewise, the homestead exemptions provided by the Constitution are not applicable to public trust property. Article XII-A, Section 1 and Article XII-A, Section 2. Our discussion herein is necessarily limited to any exemption which may or may not rise by reason of Article X, Section 6 or Article X, Section 6A. Any discussion of tax exemptions must begin with the general principle that all property in the State of Oklahoma is presumptively taxable. Article V, Section 50, of the Oklahoma Constitution states: "The Legislature shall pass no law exempting any property within sic this State from taxation, except as otherwise provided in this Constitution." (Emphasis added) From statehood to its most recent pronouncements, the Oklahoma Supreme Court has, in an unbroken chain of authority, held to the rule that statutes exempting property from taxation are to be strictly construed against the exemptions. London Square Village v. Okla. County Equalization and Excise Board, 559 P.2d 1224 (1977); Dairy Queen of Oklahoma v. Oklahoma Tax Commission, 205 Okl. 473,238 P.2d 800 (1951); Board of Equalization v. Bonner,185 Okl. 431, 93 P.2d 1077 (1930); Oklahoma City v. Shields,22 Okl. 265, 100 P. 559 (1908). If property of a public trust is to be exempted from taxation, the exemption must arise from a fair reading of the plain language of the Constitution. Article X, Section 6, states in pertinent Part: "Taxation — Exemptions. All property used for free public libraries, free museum, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States, and of this State, and of counties and of municipalities of this State; . . . ". . . The Legislature may authorize any incorporated city or town, by a majority vote of its electors voting thereon, to exempt manufacturing establishments and public utilities from municipal taxation, for a period not exceeding five years, as an inducement to their location." (Emphasis added) The provision in Article X, Section 6 dealing with the five-year tax exemption for manufacturing establishments was construed in light of Article V, Section 50 in State v. Ford, 434 P.2d 934 (Okl. 1967). The case dealt with legislation which accorded tax exempt status to tracts of land in excess of 40 acres when located within a municipality and when used for industrial or commercial purposes. The exemptions contained in 11 O.S. 481 [11-481] and 11 O.S. 482 [11-482] (1965) were declared unconstitutional by the Oklahoma Supreme Court. In referring to an earlier opinion, the Court noted: "We held that there are no implied exemptions from taxation, and a relinquishment of such right by the state will not be presumed, unless a deliberate purpose to relinquish it appears." While declaring the ruling to be prospective only, the Court concluded that the statute was unauthorized under the provisions of Article V, Section 50, and Article X, that the legislation constituted no authority for classifying such property as exempt from city taxes and that beginning with the tax year 1968, the properties should be taxed. The Court, while striking down the relevant portions of 11 O.S. 481 [11-481] and 11 O.S. 482 [11-482] (1965), affirmed 11 O.S. 6 [11-6] (1961) (now 11 O.S. 17-112 [11-17-112] (1977)) which is the manufacturing exemption provided for in Article X, Section 6 of the Constitution. The Court also analyzed language in the article, "until otherwise provided by law," interpreting it to mean that the Legislature was simply authorized "to reduce or eliminate the exemption." Article X, Section 6A, states in pertinent part: "Intangible personal property as below defined shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State: "(f) All interests in property held in trust or on deposit within or without this State, and whether or not evidenced by certificates, shares, or other written evidence of beneficial ownership." Traditionally, the assertion that property in which a public trust has an interest is exempt from ad valorem taxation has been premised on one of three rationales to be found in Article X, Section 6 and Article X, Section 6A. First, since some governmental entity is always the beneficial owner of public trust property, the trust property is exempt under the language of Article X, Section 6, exempting "all property . . . of this State, and of counties and of municipalities . . ." from taxation. Second, all activities in furtherance of a legitimate public function by a governmental entity, it is argued, must necessarily be used for a "charitable" purpose and, therefore, also exempt under Article X, Section 6. Last, property of a public trust, including a lease of trust property, is an intangible interest in property held in trust entitled to the exemption stated under Article X, Section 6A(f). As they are more closely related on a theoretical basis, we shall discuss the grounds for an exemption under Article X, Section 6, relative to governmental ownership of property, and Article X, Section 6A, relative to exemption for trust property, more or less together. The asserted exemption for all trust property under a charitable use analysis will be examined last. Any further discussion of tax exemptions for public trust property would be impossible without at least a simple outline of how public trusts are created and operated in Oklahoma. In Oklahoma all "public trusts" are expressly controlled by statute. 60 O.S. 176 [60-176](a) (1976). The State or any county or municipality may be the beneficiary of a public trust. 60 O.S. 176 [60-176] (a), supra. Generally speaking, some owner (grantor) of property, usually unimproved real property, creates a trust by written instrument of conveyance (indenture). The grantor will convey legal title to the trust and beneficial ownership to the governmental entity. 60 O.S. 177 [60-177] (1976). Thus, in classic real property terminology, the fee simple estate of the grantor is split and conveyed, to theoretically different entities. The trust holds legal title only and all other equitable interests are the property of the governmental beneficiary. The governmental beneficiary and the trust are expressly "authorized and empowered to lease such property" for any purpose consistent with the lawful purposes set forth in the trust indenture. See 60 O.S. 176 [60-176] supra; see also Shotts v. Hugh, 551 P.2d 252 (Okl. 1976); Shipp v. Southeastern Oklahoma Industries Authority, 498 P.2d 1395
(Okl. 1972). The recipients of separate interests are "theoretically" different because the trustees of the trust may be one in the same persons as the governing body of the governmental beneficiary. See 60 O.S. 178 [60-178](e) and 60 O.S. 178 [60-178](c) (1976); see Halstead v. McHendry, 566 P.2d 135
(Okl. 1977). Whether there may be a "merger" of interest when trustees and beneficiaries are the same persons is not important to any further discussion of tax exempt status of trust property. See 60 O.S. 178.4 [60-178.4] (1976). With the lease and the trust property as security, the trust issues bonds as a means by which to generate capitol for the construction of improvements on the trust property. See 60 O.S. 176 [60-176](d) and 60 O.S. 176 [60-176](e). The lease provides for rent to be paid by the lessee at a precomputed level adequate to fully amortize the bonds plus pay for administrative costs of the trust and maintenance of the improvements. The lease may or may not contain an option to purchase clause. What was once a unitary whole, the fee simple estate of the grantor, has been, at the time the lessee takes possession under the lease, divided into three separate identifiable legally enforceable interests: bare legal title held by the trust, equitable title held by the governmental beneficiary, and a leasehold estate for a term of years held by the lessee. The questions which arise are whether the leasehold estate to a private person is such an interest in property as may be separately identified for purposes of taxation and, if so, whether some constitutionally permissible tax exemption attaches to the leasehold estate. The Oklahoma Supreme Court has never been asked to rule upon the precise issue of whether a private lessee of a public trust is entitled to a tax exemption for the leasehold interest. While there is a prior Attorney General's Opinion, No. 69-156, addressing the subject in the context of Article X, Section 6A(f), we do not find the opinion a correct recital of Oklahoma law and, for reasons hereafter discussed, withdraw it. Opinion No. 69-156 focused on the nature of the leasehold interest. The Opinion concludes, relying on a West Virginia case State v. Bare, 60 W. Va. 483,56 S.E. 390 (1906), that the leasehold is "intangible property" and thus within the Article X, Section 6A(f) exemption. 3 Whether termed realty or intangible personalty, the nature of the interest held by the lessee is of no concern in ascertaining its taxable status. The determinative factor is whether some separate identifiable legally enforceable interest has been conveyed by the tax exempt equitable owner and the tax exempt trust, as owner of legal title, to a non-tax exempt third party. Such property as the non-tax exempt third party owns would no longer fall under the exemption afforded by Article X, Section 6A (f). This conclusion is inconsistent with virtually the entire body of property law developed at the common law, the vast majority of case authority from other jurisdictions, and the decisions of the Oklahoma Supreme Court. In Ferguson v. District Court, 544 P.2d 489 (Okl. 1975), the Court said: "A lease is a contract between the lessor and lessee. It vests a right in the lessee to the possession of land for a definite term. A lease becomes a grant of an estate in real property when it takes effect in possession. Howard v. Manning, 79 Okl. 165, 192 P. 358,12 A.L.R. 819 (1920); Sublett v. City of Tulsa, 405 P.2d 185,200 (Okl. 1965). During the term of the lease, the lessee holds an outstanding leasehold in the premises which for all practical purposes is equivalent to absolute ownership. The estate of the lessor during such time is limited to his reversionary interest which ripens into perfect title at the expiration of the lease. Tri-Bullion Corp. v. American Smelting Refining Co., 58 N. M. 787,277 P.2d 293, 297 (1954); Yrisarri v. Wallis, 76 N.M. 776,418 P.2d 852 (1966); 51C C.J.S. Landlord Tenant 202(9), p. 529."