1999 OK CIV APP 130

STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Appellant,

v.

S & S PROPERTIES, a general partnership; Steven W. Hassinger, a single person, individually, and as a partner of S & S Properties, a general partnership; Susan K. Hassinger, a single person, individually, and as a partner of S & S Properties, a general partnership; and the Mayes County Treasurer, Appellees.

No. 90277.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 22, 1999.

Rehearing Denied July 26, 1999.

Certiorari Denied Nov. 23, 1999.

Kelly F. Monaghan, Lori Gilliard, Hollo-way & Monaghan, Tulsa, for Appellant.

Randall Elliott, R. Benjamin Sherrer, Randall Elliott, P.C., Pryor Creek, for Appellees.

## OPINION

GOODMAN, P.J.

¶ 1 This is an appeal from a trial court judgment entered on a jury verdict awarding the defendants a money judgment as just compensation for the plaintiff's taking of their property by eminent domain. Based upon our review of the record and applicable law, we reverse and remand for a new trial.

I

¶ 2 In December 1977, defendant Steve Hassinger started a business in Pryor, Oklahoma. In 1979, the business was incorporated as Pryor Truss Company, an Oklahoma corporation, wholly owed by the defendant and his wife, defendant Susan Hassinger. Approximately one year later, the defendants purchased a parcel of land north of Highway 20 to locate the business, which leased the property and paid monthly rental to the defendants. The defendants also started a lumber yard on the property. The defendants eventually divorced, and transferred

ownership of the property to S & S Properties, a general partnership wholly owned by the defendants. Pryor Truss paid monthly rental of $2,500 to S & S Properties pursuant to an annual written lease agreement. It is not disputed that the last such lease was executed December 31, 1986, for a one-year term. Thereafter, Pryor Truss continued to operate on the premises and pay monthly rent.

¶ 3 In January 1993 S & S Properties purchased at a sheriff's sale approximately 3 acres directly south of Highway 20 from the existing property. The 3 acres were originally purchased for truss storage and lumberyard overrun storage. S & S built a structure for a retail carpet business, and ultimately expanded the structure to offer 12,000 square feet for additional commercial business operations. In July 1995, S & S began construction of a building to accommodate expanded operations of Pryor Truss and to manufacture pallets pursuant to a contract with Ford Motor Company Glass Plant in Tulsa. *It is not disputed that S & S and Pryor Truss did not execute a lease for Pryor Truss' use and occupancy of the southern tract nor did the monthly rental paid by Pryor Truss change.*

¶ 4 In a letter dated September 21, 1995, the Oklahoma Department of Transportation notified S & S Properties of its intention to acquire, by purchase or condemnation, a portion of the S & S land south of Highway 20 for the purpose of widening the highway. The Department offered S & S $10,000.

¶ 5 On February 14, 1996, the State of Oklahoma, ex rel. the Department of Transportation, filed a petition alleging it was necessary for the Department to acquire a portion of the southern tract for the construction and/or maintenance of the State transportation system, and that the Department and S & S had failed to reach an agreement regarding the Department's acquisition of the property. The Department requested the court to appoint three disinterested "freeholders" to inspect the property and determine the just compensation to which S & S is entitled by reason of the taking of the property. The taking entailed a strip of land comprising

approximately 0.4 of an acre running along the highway frontage of the southern parcel. Both the Department and S & S filed a demand for a jury trial. The court-appointed commissioners established just compensation for the condemned property at $14,000, which the court ordered the Department to deposit with the court clerk.

¶ 6 Pryor Truss filed a separate action for inverse condemnation, claiming it had a compensable interest in the property being taken. Over the Department's objection, the trial court granted S & S' motion to consolidate the eminent domain action with the inverse condemnation suit.

¶ 7 The Department filed a Motion for Partial Summary Judgment arguing that Pryor Truss has never had a written leasehold interest in the condemned property, was a tenant at will with no legal expectation of continued occupancy, and therefore had no legally compensable interest in the property. The defendants replied, raising 3 disputed issues of material fact:

1. Has the previously existing written lease between the parties been orally extended?

2. Is Pryor Truss Company a tenant at will or on the date of taking did it have the enforceable right to remain upon the part until at least the end of the year based upon the agreement of the parties?

3. Even if you assume that Pryor Truss Company is a tenant at will, does that fact exclude them [*sic*] claiming damages as a result of the taking by ODOT?

The trial court denied the Department's motion, as well as the Department's Motion to Limit the number of expert witnesses the defendants could call regarding value of the condemned property. The parties then filed a total of 21 motions in limine, and responses thereto. On August 8, 1997, the trial court heard argument and ruled on the motions in limine.

■ ¶ 8 The court conducted a jury trial on the matter August 11 through August 15, 1997. The defendants presented their evidence first.[1] At the conclusion of the defendants' testimony, the Department

1. In an eminent domain proceeding, the con-

demnor creates a rebuttable presumption of ne-

renewed its Motion for Partial Summary Judgement or, in the alternative, a directed verdict as to Pryor Truss. The trial court denied both motions. The jury returned a verdict awarding the defendants $100,000. The trial court entered judgment for $86,000 (the $100,000 jury verdict less the $14,000 the Department had deposited with the court clerk).[2] Because the jury verdict exceeded the award of the court-appointed commissioners by more than 10 percent, the defendants filed a motion to recover their costs and attorney fees.[3] The trial court held a hearing November 25, 1997, and ordered the Department to pay $36,626.82 for the defendants' appraiser, engineering, and expert witness fees, plus costs of the action, and $31,156.50 for an attorney fee. The Department appeals.

## II

¶ 9 The Department first contends the trial court erred in denying its Motion for Partial Summary Judgment or, in the alternative, its Motion for a Directed Verdict. We agree.

■ ■ ¶ 10 When the defendants rested their case in chief, *but before the Department put on its evidence,*[4] the Department's attorney sought to renew its Motion for Partial Summary Judgment[5] "or in the alternative for a Direct [*sic*] Verdict that is against Pryor Truss Company."[6] He argued:

> The evidence that's been presented in this case, Judge, in no way establishes any damages that have been sustained by Pryor Truss Company. There's been no testimony of any of the witnesses presented by the Defendant and to a specific monetary amount that they would assigned [*sic*] to damages sustained by Pryor Truss Company.
>
> In fact, if the Court would reflect upon the testimony that's been given by the

---

cessity for the taking by filing the petition and resolution of necessity from the condemning authority, whereupon the burden of proof shifts to the condemnee to show that the taking is not necessary. *Rueb v. Oklahoma City,* 1967 OK 233, 435 P.2d 139. When the condemnee has filed an exception to the report of the commissioners, and a demand for a jury trial, the condemnee likewise has the burden of proof in the jury trial, and therefore presents evidence first, to show that the actual value of the taking exceeds the report of the commissioners. "If the party demanding such trial does not recover a verdict more favorable to him than the assessment of the commissioners, all costs in the district court may be taxed against him." 66 O.S. 1991 § 55.

2. On December 8, 1998, the trial court filed an Order Nunc Pro Tunc correcting the original journal entry to include the unintentional omission of defendant Pryor Truss Company, "said omission not representing the verdict of the jury."

3. Title 27 O.S.1991, § 11, states, in relevant part:
   Where a condemnation proceeding is instituted by any person, agency or other entity to acquire real property for use as provided in Section 9 of this title and
   . . . .
   3. If the award of the jury exceeds the award of the court appointed commissioners by at least ten percent (10%), the owner of any right, title or interest in such real property may be paid such sum as in the opinion of the court will reimburse such owner for his reasonable

attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings. Such determination by the court shall be appealable to the Supreme Court in the same manner as any other final order. The final award of such sums will be paid by the person, agency or other entity which sought to condemn the property.

4. *See* note 1.

5. When summary judgment is sought against one of several parties pursuant to District Court Rule 13, 12 O.S.Supp.1998, ch. 2, app., and there are no controversies as to material facts between the movant and the party against whom judgment is sought, summary judgment is proper. *Riffe Petroleum. Co. v. Great Nat'l Corp., Inc.,* 1980 OK 112, 614 P.2d 576. A "partial summary judgment"—where a ruling is sought as to certain *facts or issues* underlying a theory of recovery where separate theories of recovery are pleaded as arising from one occurrence giving rise to a single cause of action—is not a "judgment" because it is not a final determination of the rights of the parties to an action. *Reams v. Tulsa Cable Television; Inc.,* 1979 OK 171, 604 P.2d 373. In such a case, the proper term is "interlocutory summary adjudication." *Mann v. State Farm Mut. Auto. Ins. Co.,* 1985 OK 27, 698 P.2d 925.

6. A "demurrer" is the proper term for a motion for judgment alleging the party upon whom rests the burden of proof has not proven a cause of action at the close of his evidence. 12 O.S.1991, § 577.

experts, they both indicated that these damages were damages sustained by S & S Properties.

¶ 11   The defendants replied:

We have proven that Pryor Truss Company had an interest in this property by virtue of its lease.

That this lease offer was for a year at a time, but there were $2,500.00 dollar [*sic*] per month lease payments. We've established a use of this property by Pryor Truss Company. That what they call the truss building or the utility building.

In question thereto we have established the loss of the use of this property for storage for the trusses....

And when they're consolidated for trial we take the position they're consolidated, in effect, into a condemnation action....

The law engages in a presumption that we're dealing with one interest owner. And a number is assigned for one interest owner....

. . . .

And for a series of years they [*sic*] were actual ... written lease agreements. But then after 1987 those written lease agreements were suspended. But the rent kept going on an oral extension from year to year.

. . . .

It is our position, Your Honor, that we'd established a prima facie case that Pryor Truss Company is entitled to participate, to some extent to whatever damages it is....

And all we've got to establish is that they have suffered some degree of damage and that they have a compensable interest. We believe we've established both.

¶ 12   The Department then argued:

[L]et's talk about what interest they have. Your Honor, the evidence established that there was a written lease agreement entered into the last time in 1987. The property that's involved in this case was not purchased until 1993.

And therefore, we have absolutely no written lease agreement that governs this property. What we have, Your Honor, is a tenancy at will. And we would adopt the legal authority that's set out in our [M]otion for Partial Summary Judgment, which clearly indicates that tenant at will has no interest in property which would entitle [*sic*] him to compensation upon taking.

The reason being is that is [*sic*] tenancy can be terminated at any time. There's no long-term lease agreement here, Judge.... It's a month-to-month lease.

But more importantly, Judge, is this idea ... that they began paying $2,500.00 a month back in ... '85 or '87, but that amount never changed.

And so, when Pryor Truss Company moved across the street and began utilizing this property, Your Honor, I think there's a real question as to whether they even paid any rent because they weren't paying any additional amount.

. . . .

The only evidence is that they continued to pay the same amount of rent for the property on the north side. There was no ... evidence as to what amount of that rent they were going to allocate for the south side.

And so, Your Honor, I think you're left without any credible evidence that Pryor Truss Company was actually paying anything for the use of this land. Which would clearly establish it's tenancy at will.

¶ 13   The trial court denied the Department's motions.

¶ 14   In this appeal, the defendants state that "[q]uestions of fact existed with respect to the leasehold estate owned by Pryor Truss." However, they do not identify any such facts, nor do they dispute any of the following material facts clearly established by the evidence: (1) In the 1980s, Pryor Truss paid $2,500 a month to S & S Properties pursuant to an annual written lease for Pryor Truss' occupancy of the north property; (2) the last written lease covering the north property expired December 31, 1987; (3) Pryor Truss continued to occupy the north property and pay monthly rental of $2,500; (4) the south property was purchased in 1993; (5) no written lease was executed for the south property; and (6) after Pryor

Truss expanded its operations and occupied both the north and south properties, it continued to pay $2,500 a month.

■ ¶ 15 Okla. Const., Art. 2, § 24, states:

Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken.... In all cases of condemnation of private property for public use or private use, the determination of the character of the use shall be a judicial question.

Title 41 O.S.1991, § 2, states:

When premises are let for one or more years, and the tenant, with the assent of the landlord, continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant at will; provided that no lease or rental contract of premises shall be continued, *unless the original contract was in writing,* and all other lease or contracts shall expire by limitation with the calendar year, without notice. (Emphasis added.)

Thus, with respect to the expired written lease covering the north property, Pryor Truss clearly is a tenant at will, with a year-to-year tenancy.[7]

¶ 16 However, it is undisputed that the written lease for the north property did not encompass the south property, and *no* written lease agreement was ever executed with respect to Pryor Truss' occupancy of the south property. We are not persuaded by the defendants' argument that there had been an oral modification of the expired written lease covering the north property to include the south property. Neither the evidence, nor the law, support such a conclusion.[8]

■ ¶ 17 The term "tenant at will" is defined as: "Any person in the possession of real property, with the assent of the owner...." 41 O.S.1991, § 1. An attribute of such a tenancy is that possession of the real property is for an indefinite period. *Hancock v. Maurer,* 103 Okla. 196, 229 P. 611 (1924). With respect to the south property, we find Pryor Truss is a tenant at will.

■ ¶ 18 The Oklahoma Supreme Court has not addressed the issue 'of whether a tenant at will who is occupying a premises with the consent of the property owner, *but with no prior written lease agreement,* has a property interest entitling the lessee to just compensation when land is taken for public use. Generally, the " 'measure of compensation for the estate of the tenant taken is the value of her leasehold estate, subject to the rent covenanted to be paid.' " *Garibaldi v. Oklahoma Indus. Finance Corp.,* 1975 OK 108, ¶ 14, 543 P.2d 555, 558 (quoting *Corrigan v. City of Chicago,* 144 Ill. 537, 33 N.E. 746 (1893)). In a partial taking, "the lessee is entitled to the difference between the fair market value of the lease before the taking and the value of the lease after the taking." 29A C.J.S. *Eminent Domain* § 190 (1992).[9]

¶ 19 There is a split of authority among the jurisdictions which have addressed the interest of a tenant at will in an eminent domain proceeding. As noted in 2 *Nichols on Eminent Domain* § 5.02(6)(e) (Rev.3d ed.1998):

The right of a tenant holding occupancy under conditions less secure than a lease or month to month tenancy depends upon his right to continued possession against the will of the landlord. In this case, the tenant has no interest to recover compensation for the taking of property.

cases address the legal consequences of tenants holding over pursuant to *written* leases which were either void, defective, or expired.

---

7. The legal significance of the year-to-year tenancy at will relates to the 3–month notice necessary to terminate the tenancy as opposed to the 30–day notice permitted for tenants at will, or tenants "from one period to another." 41 O.S. 1991, §§ 3, 4, and 5.

8. The authority relied upon by the defendants is not relevant to the facts before us. All the cited

9. We cite treatises in this opinion not as legal authority, but as a convenient source of the numerous citations of authority contained therein.

Mere expectation of continued possession based upon the previous conduct of the parties cannot be considered when assessing compensation. Since the tenant's gain would be at the expense of the landlord, it cannot be presumed that the latter would act to his own disadvantage. Applying this principle, it would seem that a tenant at will has an estate or interest in the land, even if it is of little value, and should be allowed to share in the compensation. Some rulings support this claim but the weight of precedent is otherwise.

See also 29A C.J.S. Eminent Domain § 190 (1992) ("[a] tenant by sufferance or from month to month has no such interest as entitled him to compensation; and this is true as to a tenant at will, although there is also authority to the contrary."); 26 Am. Jur.2d § 259 (1996) ("a mere tenant at will . . . is generally not entitled to compensation for the taking of his or her interest, because of the insignificance of the interest or the difficulty in valuing it, although where tenants' statutory rights are violated by a taking, even tenants at will have been found entitled to compensation.")

¶ 20   We find, under the undisputed facts, that Pryor Truss was a tenant at will with respect to the condemned property and, as such, is not entitled to compensation in this proceeding. We hold the Department is entitled to judgment as a matter of law on its Motion for Summary Judgment.

¶ 21   The defendants concede that the legal status of a tenant at will in eminent domain proceedings is unsettled in Oklahoma. They contend, however, that if the trial judge reached a legal conclusion contrary to ours, the error is harmless. We do not agree.

■ ¶ 22   We cannot say with any assurance that the finders of fact were not improperly influenced by evidence of the effect the taking had on the business operation of Pryor Truss, or that the award the jury found necessary to justly compensate all the defendants, including Pryor Truss, was not inflated as a consequence. As a result, the trial proceedings were tainted, necessitating reversal and a new trial.

III

¶ 23   The Department next contends the trial court erred in admitting evidence of a purely speculative nature. Specifically, the Department argues "the trial court erred in admitting testimony regarding the future and speculative use of the property and refusing to grant a mistrial." We disagree.

¶ 24   In City of Tulsa v. Biles, 1961 OK 37, ¶ 5, 360 P.2d 723, 725, the Oklahoma Supreme Court adopted the following statement from 2 Nichols, The Law of Eminent Domain § 445 (2d ed.):

Evidence of the value of the property for any use to which it is reasonably adapted, is, as already stated, admissible, but such evidence must be limited to a bare statement why the property is adapted for a particular purpose and to testimony of its value for such purpose. As bearing upon these issues the owner may offer a plan showing a possible scheme of development for the purpose for which it is most available, but he cannot go further and describe in detail to the jury a speculative enterprise for which in his opinion or that of some expert the land might be used, and base his estimate of value upon the profits which he would expect to derive from the enterprise.

"While the owner of property taken has been permitted to show loss of profits of a business, if he can, generally, loss of profits of a business, present or future, does not constitute an element of damage" in eminent domain proceedings. 29A C.J.S. Eminent Domain § 150 (1992).

¶ 25   In the matter before us, the Department filed a pretrial First Motion in Limine seeking exclusion of any trial testimony, evidence, argument, or comment regarding any future expansion plans S & S may have had for the property, and the frustration of those plans caused by the taking.

¶ 26   The trial court denied the Motion and said it would admit evidence limited to the facts that the property had been developed and expanded in stages, that the east end of the commercial building had been specifically constructed in a manner to ac-

commodate future expansion, that S & S intended to expand at some time "to the legal limit" or approximately 10 more feet, and that the taking made it impossible to expand in the manner anticipated *and* comply with the municipal set-back requirements. The Department argues such testimony is nonetheless speculative because it was not supported by evidence of "specific plans" for expansion.

¶ 27   When one of S & S' experts began to testify that, as a result of the taking, (1) S & S would "loose 60 percent of the store-front parking" and that such a loss would be "devastating to the use of that building for commercial purposes," and (2) S & S could not expand in compliance with setback requirements and would have a smaller area available for future expansion, the trial court correctly sustained the Department's objection to the testimony.

¶ 28   We find the testimony of S & S' principal was properly limited in scope. The evidence was relevant to the jury's determination of the use to which the property is reasonably adapted, especially in context of the demonstrated history of periodic commercial expansion on the property and the principal's testimony that the east wall of the building had been specifically constructed to accommodate future expansion of the facility without disturbing ongoing commercial operations.

¶ 29   The Department argued to the trial court that it had been substantially prejudiced by the testimony because the jury had been "poisoned." However, the Department did not move for a mistrial. Nonetheless, the trial court stated "I don't think it merits a mistrial. I'll sustain the objection." The trial court then offered to admonish the jury to disregard the testimony, but the Department declined the offer.

¶ 30   We find the challenged evidence was relevant, was properly limited in scope, and did not prejudice the Department. The Department's second proposition is without merit.

IV

¶ 31   The Department next contends "the judgment should be vacated as it was given under the influence of speculation, prejudice and sympathy and was not supported by any competent evidence." The argument is that none of the expert appraisers testified to damages as high as the $100,-000 jury award, and the only other evidence of higher damages was the self-serving, speculative and therefore incompetent testimony of the defendant principal of S & S. Inasmuch as this matter must be remanded for a new trial excluding any evidence of damages pertaining to Pryor Truss, we need not address this proposition of error other than to say an owner of property is not required to prove his qualifications in order to testify as to the value of property in the same degree as a stranger. *Hartford Fire Ins. Co. v. Smith*, 141 Okl. 90, 284 P. 624, 626 (1930). An owner is competent to testify as to his opinion as to the value of his property which has been damaged, but his opinion is not conclusive. It is, as any other fact issue, subject to the jury's determination. They may consider it together with all other circumstances and facts in the case. *Poteete v. MFA Mutual Ins. Co.*, 1974 OK 110, 527 P.2d 18; *Insurance Co. of State of Pennsylvania v. Smith*, 435 F.2d 1029 (10th Cir. 1971).

V

¶ 32   The Department last contends "the trial court erred in awarding attorney fees based on an hourly rate when the agreement provided that a contingency fee be awarded if it were a greater amount." Inasmuch as this matter is remanded for a new trial, the issue of attorney fees is not ripe for our consideration. Accordingly, the defendants' Application to Tax Appeal–Related Attorney Fees is denied.

VI

¶ 33   We hold the judgment on appeal must be reversed as to damages sustained as a result of the taking. The matter is remanded to the trial court for a new trial consistent with this opinion.

¶ 34 REVERSED AND REMANDED FOR NEW TRIAL.

RAPP, J., and TAYLOR, J., concur.